THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RALPH PETER CISNEROS, Appellant.

First Department, October 22, 1974.

*Shepard Green* for appellant.

*Norman E. Frowley* of counsel (*Mario Merola, District Attorney*), for respondent.

MURPHY, J.   Defendant was charged with patricide.   After a jury trial he was convicted of manslaughter in the first degree and sentenced to an indeterminate term of imprisonment not exceeding 15 years.   On this appeal he alleges an assortment of errors below, including the assertion that his guilt was not proven to a moral certainty.   With the exception of the one contention hereinbelow discussed, we find such claims meritless.

Defendant was first arrested for assault (and later rearrested for homicide) on March 1, 1972.   His trial began on November 14, 1973.   About one month prior to the commencement of trial defense counsel, in a perfunctory one and one-half page moving affidavit, requested the appointment of (a) a physician "to testify as an expert as to the probably [*sic*] cause of death allegedly caused by defendant herein", (b) an investigator, "to inquire into the circumstances surrounding the acts alleged to have caused the death of defendant's alleged victim", and (c) a qualified psychiatrist, "[d]ue to defendant's past history of mental illness".   The application was granted only to the extent of authorizing the employment of a physician and an investigator.

Defendant claims the court's refusal to include in its pretrial order an authorization to employ the services of a psychiatrist prevented him from preparing an insanity defense and his counsel from making an informed judgment as to whether or not to permit him to testify.

In such connection it is parenthetically noted that the record before this court, as originally submitted, was bare of any indication that defense counsel ever informed the court below of his intention to interpose an insanity defense based on defendant's extensive psychiatric history; or of such history. Indeed, no requisite written notice of any claimed reliance on a defense of mental illness or defect was ever served or filed. (CPL 250.10.) Respondent's implied criticism of defense counsel for failing to have his court authorized physician examine defendant to determine the feasibility of an insanity defense, then procuring a psychiatrist's services during trial and obtaining authorization therefor *nunc pro tunc* (County Law, § 722-c), overlooks the limited purpose for which retention of such physician was obtained.

However, and in any event, since it is fundamental that the State cannot, and must provide adequate safeguards to insure that it does not, convict a legally incompetent person of a crime (*Pate* v. *Robinson*, 383 U. S. 375; *People* v. *Hudson*, 19 N Y 2d 137), we have examined defendant's claim in the interests of substantial justice.

Commendably, the Bronx County District Attorney's office, in recognition of its obligation to see that justice is served, has furnished us with pertinent information to assist us in determining this question. From all the information now in our possession, including the presentence report, the following appears.

In February, 1962, at age 25, defendant was hospitalized at Pilgrim State Hospital and, until placed on convalescent care in July, 1966, was in and out of that institution on at least seven occasions, with a history of numerous escapes precipitated by alcoholic excesses. While at Pilgrim State his condition was diagnosed as " Schizophrenia, mixed type ".

On June 2, 1969, defendant was admitted to Rockland State Hospital with a diagnosis of " Schizophrenia, chronic undifferentiated type " and remained hospitalized thereat until May, 1971. Thereafter, he was hospitalized for brief periods at Brooklyn State Hospital, Central Islip State Hospital and Manhattan State Hospital.

Following his arrest on the instant charges, defendant was ordered to be psychiatrically examined. Two Bellevue physicians, in their report dated June 1, 1972, diagnosed defendant's condition as " chronic schizophrenia ", found him incapable of standing trial and recommended that he be adjudicated a dangerous incapacitated person. Some two weeks later, after a

hearing, defendant was ordered returned to court (on the basis of medical testimony that his condition had improved). But by another order, dated June 29, 1972, defendant was remanded to Bellevue for re-examination. Upon such re-examination the same two Bellevue physicians, in their report dated July 5, 1972, again recommended that defendant be adjudicated a dangerous incapacitated person; and he was so found, after a hearing.

On August 18, 1972, defendant was admitted to Matteawan State Hospital and he remained there until March, 1973, when he was found fit to proceed to trial; which determination was confirmed on a further examination, conducted a month later, by the Bronx Supreme Court Psychiatric Clinic. Defendant's trial commenced some six months thereafter and resulted in the conviction on appeal. Less than three months after sentence was pronounced, defendant was admitted to Matteawan State Hospital for the criminally insane (now Fishkill Correctional Facility).

In light of the foregoing, the proper administration of justice compels us to conclude that the denial of psychiatric assistance to defendant precluded the assertion and establishment of what appears to have been his only possible defense — insanity. The failure to adequately prepare or present such a defense is no bar to the granting of appropriate relief. (Cf. *People* v. *Bennett,* 29 N Y 2d 462.)

Accordingly, the judgment of Supreme Court, Bronx County (McCAFFREY, J.), rendered December 20, 1973, should be reversed, on the law and as a matter of discretion in the interest of justice, and the case remanded for retrial, after an appropriate determination is first made as to defendant's competency. (*People* v. *Bangert,* 22 N Y 2d 799.)

STEUER, J. (dissenting). We believe that defendant was deprived of no right. He was not brought to trial until two separate boards had certified that he was capable of standing trial. There is not the slightest indication in the record that the defendant was incapacitated from defending himself or that he desired to assert insanity. Furthermore, on a pragmatic basis it is difficult to see how defendant has been injured. If it were found that he was insane and not guilty by virtue of that, he would still have to be confined to an institution, and it would have to be a maximum security institution due to defendant's proclivity for escaping from institutions with a lesser degree of security and his extremely dangerous nature when free. He is now confined in a medical facility of that character. Should

there be a recovery sufficient to allow the authorities to regard his discharge as not involving an inordinate risk, nothing in the sentence precludes his parole. The new trial ordered by the majority on what we believe to be an overprotective theory cannot help defendant and is a needless gesture.

LUPIANO and LANE, JJ., concur with MURPHY, J.; STEUER, J., dissents in an opinion in which MARKEWICH, J. P., concurs.

Judgment, Supreme Court, Bronx County, rendered on December 20, 1973, reversed, on the law and as a matter of discretion in the interest of justice, and the case remanded for retrial, after an appropriate determination is first made as to defendant's competency. (*People* v. *Bangert,* 22 N Y 2d 799.)