THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE LUIS SULLIVAN, Also Known as MILTON ECHEVARRIA, Appellant.

First Department, July 1, 1975

*Jane E. Berger* of counsel *(William E. Hellerstein* and *William J. Gallager,* attorneys), for appellant.

*Barry N. Birnbaum* of counsel *(Jared J. Scharf* with him on the brief; *Mario Merola, District Attorney),* for respondent.

LANE, J. The evidence adduced with regard to the commission of the double homicide in this case is most graphic, and the dissent concedes that the proof of the performance by the defendant of the criminal acts alleged was established beyond a reasonable doubt.

There remains for discussion, however, a twofold problem with regard to the defendant; namely, was he insane at the time of the commission of the crime, and was he competent to stand trial?

As to the former claim of insanity at the time of the crime, we note that defendant refused to be examined by psychiatrists. He claimed that he was sane and that his defense of alibi was a complete defense to the crimes charged. He repeatedly stated that he understood the act of which he was accused and the consequences of that act.

Under these circumstances, the Trial Justice appropriately disallowed any medical testimony with regard to defendant's insanity at the time of the commission of the crime *(Matter of Lee v County Ct. of Erie County,* 27 NY2d 432).

With regard to the second prong of defendant's insanity—namely, his competency to stand trial—we find no reason to overturn the rulings of the Trial Justice.

Pursuant to CPL article 730, a pretrial hearing was held to determine whether defendant was an "incapacitated person"; i.e., was he able to understand the proceedings being conducted and also whether he was able to assist in his own defense (CPL 730.10, subd 1).

The caveat found in the psychiatric report that the defendant "might disorganize under the stress of incarceration and require psychiatric attention" does not vitiate the main findings. in the report that defendant was competent to stand trial.

The logic of the dissent in voting for a new trial for this defendant is marred by a fuzzing and merger of the two separate and distinct concepts of mental incapacity, one being the capacity of the defendant to know and appreciate the nature and consequences of his conduct or its wrongfulness, and the other being the competency of the defendant to understand the proceedings against him and his ability to assist in his own defense.

The only troublesome element during the trial which prompted the Trial Justice to direct a further psychiatric examination was whether defendant was able to assist in his own defense. Defendant, in fact, may not have assisted in his own defense to the extent that he disagreed with his own attorney's theory of the case. However, this does not mean, nor does the record reveal, that defendant was mentally disoriented or that his trial was unfairly conducted.

Lastly, it must be noted that the alleged incapacity of juror No. 8 does not warrant reversal and remand for a new trial. When that juror's comments were revealed to the court, a psychiatric examination was directed. The reporting doctor concluded that, though the juror suffered from hallucinations, he was nonetheless competent to make a judgment on the merits of the case presented to him in court.

Recently, a juror in attendance at a trial in the Federal District Court for the Southern District was found to have "hallucinatory tendencies, symptoms of possible psychosis, paranoia, and grandiosity, and in general an inability to appreciate reality without fantasizing." Nonetheless, the Court of Appeals for the Second Circuit found this not to be sufficient grounds for reversal (*Dioguardi v United States,* 492 F2d 70, cert den 419 US 873).

In that case, Judge LUMBARD stated (p 79): "Reluctance to inquire into the state of mind of any juror and into the conduct of the jurors during their deliberations rests on sound reasons. The rule against any inquiry whatever recognizes exceptions only where there is clear and incontrovertible evidence of incompetence shortly before or after jury service, clear evidence of some criminal act, or evidence of some 'objective fact' of internal impropriety." Similarly, in the case at bar, there has been insufficient shown to warrant reversal on the basis of the alleged incompetence of juror No. 8.

Accordingly, the judgment of the Supreme Court, Bronx County, rendered June 29, 1973, convicting the defendant

after trial of two counts of murder and of possession of a weapon as a felony, should be affirmed.

MURPHY, J. (dissenting). Defendant was convicted of a double homicide following a racial slur and sentenced to a 25-year to life prison term. If he was sane at the time of occurrence, and at trial, I would have no hesitancy in affirming this conviction. But I am not persuaded, on the record before us, that such is the fact.

Moreover, this case is further complicated by the fact that defendant's guilt was judged by a "peer" whose own soundness of mind is open to serious question.

The People contend that defendant responded to a bar patron's question as to how he felt about "being Black and Puerto Rican together" by shooting the questioner; and then the latter's friend who attempted to prevent his escape. Defendant denied being in the premises. His alibi was supported by his sister and a friend who was the guest of honor at a party assertedly held at precisely the same time as the event in issue. Defense counsel, over vigorous objection by appellant, also interposed a defense of insanity.

After conducting a *Wade* hearing to determine the admissibility of certain identification testimony, an experienced Trial Justice, who had observed appellant's behavior at the hearing and thereafter, on his own motion, directed the Bronx Psychiatric Clinic to conduct an immediate examination as to defendant's competency to stand trial. When two of the clinic's psychiatrists opined that defendant was dangerous and incapable of standing trial, the trial court issued a final order of observation at Bellevue Hospital. (CPL 730.50.) After such examination, two Bellevue psychiatrists concluded that defendant was competent to stand trial, though conceding that this "adjustment is fragile and that * * * there is the possibility that he might disorganize under the stress of incarceration and requires psychiatric attention." After holding a competency hearing the court evaluated the conflicting reports and testimony and ruled that defendant was capable of standing trial.

At the close of the hearing, defense counsel notified the District Attorney (against his client's wishes) that he would interpose an insanity defense at the trial. The District Attorney requested appellant to submit to a psychiatric examination to ascertain his sanity on the date of the crime. Appellant

originally agreed to do so if removed from isolation. Several days later, however, the prosecutor learned that defendant had refused to be interviewed by the defense psychiatrist and informed the court that it would apparently be a useless gesture to send the People's psychiatrist to interview him. Upon direct inquiry by the court, defendant replied: "I don't want to see any doctor, I want to finish this case."

The court thereupon relieved the People of the responsibility of bringing in a psychiatrist and prohibited defense counsel from introducing any psychiatric testimony, on the authority of *Matter of Lee v County Ct. of Erie County* (27 NY2d 432).

The obviously still concerned Trial Justice, fearful that appellant was unable to assist in his own defense, interrupted the trial to order a second competency hearing after defendant took the stand against the advice of his attorney, exhibited an extremely bellicose attitude toward defense counsel and accused his lawyer, the prosecutor and the court of conspiring to convict him.

The court-appointed psychiatrist (one of the Bellevue physicians who had previously examined defendant in connection with the first hearing) re-examined defendant for about 80 minutes and again concluded that defendant was capable of standing trial. Defense counsel attempted to controvert this finding through the testimony of a psychiatrist who, though unable to converse with defendant, was of the opinion, based upon his four days' observation of defendant in the courtroom and the filed psychiatric reports, that defendant was suffering from irreversible schizophrenia of a paranoid type and was incompetent. The following morning the court ruled that defendant was competent to stand trial "beyond a reasonable doubt"; and the trial proceeded.

At the conclusion of defendant's case, defense counsel called attention to the fact that appellant, despite his earlier refusal to do so, consulted with the court-appointed psychiatrist during the mid-trial competency hearing and invited reconsideration of the prior ruling excluding all psychiatric testimony as to sanity. The court, however, adhered to its original holding and instructed defense counsel to refrain from mentioning anything relating to insanity in his summation to the jury. Accordingly, the only defense presented at trial was alibi. The jury chose to disbelieve defendant and his witnesses and convicted appellant of murder (2 counts) and possession of a weapon as a felony.

Approximately one month after the verdict was returned, but before sentence was pronounced, juror No. 8 appeared at . the Complaint Bureau of the Bronx District Attorney's office to declare that he was hearing voices (transmitted by vibrations coming through the subway system or from overhead airplanes) and was being harassed by unknown people. Commendably, the prosecutor who received this complaint communicated the substance thereof to the Trial Justice and defense counsel. The juror was requested to give sworn testimony in response to questions put to him by the court and by both attorneys. His irrational responses properly persuaded the court, on consent of defense counsel, to request a psychiatric examination. The psychiatric report was submitted to the court. Though of the belief that the juror had a "[s]chizoid personality with paranoid features" and "has a personality vulnerable to a paranoid psychotic decompensation", the reporting physician concluded "that, notwithstanding his vulnerable personality and the fact of his having experienced an hallucinatory phenomenon, he was competent to make a rational judgment on the merits of the case presented to him in the court."

Despite the heinous crimes committed, the State has no legitimate interest in convicting a legally incompetent person therefor and must make every effort to refrain from doing so. (*Pate v Robinson,* 383 US 375; *People v Hudson,* 19 NY2d 137; *People v Cisneros,* 45 AD2d 510.) Accordingly, I believe reversible error was committed when the court refused to reconsider its earlier ruling after appellant co-operated with the court-appointed psychiatrist during the second competency hearing.

In *Matter of Lee v County Ct. of Erie County* (27 NY2d 432, *supra),* a criminal defendant who pleaded not guilty by reason of insanity invoked his privilege against incrimination and refused to answer questions put to him by court-appointed psychiatrists during a pretrial mental examination. Lee was thereupon precluded from offering psychiatric evidence on his capacity to commit the crime. However, other proof relevant to such defense was held admissible.

Unlike the instant case, however, there was no suggestion that Lee was incompetent to stand trial or incapable of waiving his known rights.

In the case at bar, three psychiatrists found defendant legally incapacitated. Although the learned Trial Justice chose to accept the testimony of other expert witnesses, he was fully

aware of the conflicting medical opinions and of defendant's erratic behavior. Under such circumstances, the court should not have rigidly adhered to its initial ruling and, instead, offered appellant another opportunity to comply with *Lee* and submit to full examination. The question of whether or not there was sufficient nonpsychiatric proof relevant to the defense of insanity to permit submission of the issue to the jury *(Matter of Lee v County Ct. of Erie County, supra)* or to require the prosecution to prove defendant's sanity beyond a reasonable doubt *(People v Silver,* 33 NY2d 475) need not be reached, in my view, because of the court's improper refusal to afford defendant, who had vacillated between agreeing and refusing to be examined, a further opportunity to consent to such examination following the mid-trial hearing.

Additionally, the propriety of the court's reliance on the report of only one psychiatrist at the mid-trial hearing is questionable. (CPL 730.20; *People v Armlin,* 37 NY2d 167.)

Lastly, I would vacate the instant conviction because of the apparent incompetency of juror No. 8. (Judiciary Law, § 596, subd 5.) Though this juror had no known history of mental illness, he admittedly heard "voices" during the trial and was being "chased * * * by a vibratory system" which he connected with "the F.B.I." or a "fascist organization". At the hearing it was also adduced that the juror heard these "voices" at a prior trial. The juror's mental disturbance was deeply rooted in the past, apparently stemming from the time as an Italian prisoner of war he decided to collaborate with the British during World War II. Certainly, and at the very least, defendant should have been afforded the opportunity of having his own psychiatrist examine the juror and to cross-examine the court-appointed psychiatrist.

In light of the foregoing, the judgment of conviction should be reversed and a retrial directed.

KUPFERMAN and NUNEZ, JJ., concur with LANE, J.; STEVENS, P. J., and MURPHY, J., dissent in an opinion by MURPHY, J.

Judgment, Supreme Court, Bronx County, rendered on June 29, 1973, affirmed.