■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER B. RENTZ, Appellant.—Appeal from a judgment of the County Court of Tompkins County, rendered February 23, 1976, upon a verdict convicting defendant of the crime of murder in the second degree and sentencing him to an indeterminate term of imprisonment of 25 years to life. The defendant, then 18 years old, confessed before trial that he arrived home prior to his mother in the afternoon of June 17, 1975; that he spoke with his mother about what they could do with the upstairs rooms; that they went upstairs; that no argument ensued although before they went upstairs she had complained about his setting fire to his bed the previous night; that this and other incidents in which his mother picked on him were on his mind while he was upstairs with his mother; that he had thought about killing his mother, although not seriously at first but then he thought "it would be the easiest way out"; that he picked up a chin-up bar and hit his mother once when her back was to him; that she turned around, he grabbed her arm, and hit her 10 or 12 times; that she cried "Peter" and fell to the floor; that she was not dead and he thought about the time they had hit a deer and had to cut its throat to kill it; that when he saw his mother bleeding and in pain he got a utility knife and cut her throat; that he got wet towels from the bathroom and an old rug and rope from the garage; that he wrapped his mother in the rug; that he had the urge to have sex with his mother; that he undressed her and had sex with his mother; that he cleaned up the mess with the wet towels; that he placed his mother's body in the cellar behind the furnace. The controlling issue at trial was whether or not the defendant was not guilty by reason of insanity (including intoxication from glue sniffing) when he killed his mother and/or, as charged by the trial court, whether or not he acted under extreme emotional disturbance so as to reduce the crime to manslaughter. There is no other issue as to the defendant's guilt of murder as charged in the indictment. Upon this appeal a great deal of the People's direct evidence as to the conduct of the defendant both before and after the homicide while ostensibly adduced for the purpose of showing the rationality of the defendant was objectionable as stressing other uncharged and unrelated criminal behavior or indirectly insinuating guilt by revealing that the defendant had exercised his right to remain silent after consulting with an attorney. The majority of this type of testimony was not objected to by the defendant and it appears that in fact such revelation as to prior criminal activity was consistent with the strategy of the defense. The prosecutor also elicited the defendant's personal opinion that he was "sane"

and brought to the jury's attention that a friend of the defendant had intended or attempted to help "break" the defendant out of jail. These and other facts were mentioned in the attorney's opening statements to the jury. Whatever error this type of testimony might have involved, in this particular case the proof of guilt by a deliberate premeditation of killing as a relief .from a nagging mother is sufficiently established so as to justify a finding that there is "no significant probability" that absent the error, a jury would have acquitted *(People v Crimmins,* 36 NY2d 230, 243). It was the People's burden to establish that the defendant was sane and under the circumstances in this case, due in large part to the defendant's failure to co-operate with the court-ordered psychiatric examination, it was necessary for the People to present an abundance of evidence to sustain its burden. It is somewhat of a paradox that portions of the proof offered by the People as to the defendant's sanity would have been some evidence to find the defendant insane or mentally or emotionally disturbed if the jury had so elected. Under such rather unusual circumstances it can hardly be said that the proof presented by the People was so prejudicial and cumulative as to require a reversal. The record demonstrates that the jury gave full and impartial consideration to the mental attitude and condition of the defendant at the time he committed the killing. Following its retirement to consider the case after the court's original charge, the jury spent a day and one-half deliberating the issues and on several occasions requested a reading of testimony relevant to the subjective personality of the defendant. Further, the jury requested additional instructions as to the requirement of intent for murder in the second degree and the requirements for manslaughter in the first degree (extreme emotional disturbance) and also as to intoxication. The defendant alleges error in the court's charge, however, the charge was clearly in accord with the case of *Lee v County Ct. of Erie County* (27 NY2d 432, cert den 404 US 823). The defendant's suggestion that the trial court lost jurisdiction by taking testimony of a witness at a hospital outside the territorial limits of the County Court is without merit. In this particular case the jury was directed solely to the defendant's mental function and thus, it does not appear that the prosecutorial zeal has created such harm as to warrant the conclusion that there was a denial of a right to a fair trial and/or that a reversal is required in the interests of justice. Judgment affirmed. Koreman, P. J., Greenblott, Sweeney, Main and Herlihy, JJ., concur.