■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH SEGAL, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered September 13, 1979, convicting him of three counts of perjury in the first degree, upon a jury verdict, and imposing sentence. Judgment affirmed. No opinion. This case is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (subd 5). Titone, J. P., Mangano and Weinstein, JJ., concur.

Martuscello, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: On August 20, 1975, as part of an investigation of kickback schemes in the nursing home industry, Ira Feinberg, an undercover agent, met with the defendant at the Manor of Emerson Nursing Home. At the meeting defendant, a grocery supplier, allegedly described kickback schemes and offered a kickback deal to Feinberg in supplying the Manor of Emerson Nursing Home. Unbeknownst to defendant the conversation was recorded. On July 21, 1976 defendant was called before a Grand Jury and, *inter alia,* denied offering a kickback to Feinberg. Defendant's Grand Jury testimony led to his indictment on three counts of perjury in the first degree. Trial followed. Defense counsel, in his opening statement, generally cast doubt on whether defendant could have remembered his meeting with Feinberg and then told the jury that "we've got some evidence that I think will satisfy you as to why [he] couldn't remember." The People next proceeded to present their case which included a tape of defendant's August 20, 1975 meeting with Feinberg as well as a transcript of his July 21, 1976 Grand Jury testimony. The defense began its case by calling Dr. Daniel Crane, a psychiatrist, to the stand. Shortly after Dr. Crane began his testimony the prosecutor asked for an offer of proof. The court agreed to this request and defense counsel reported that Dr. Crane will testify that defendant's memory is impaired. The prosecutor objected to the admission of such testimony and asserted that in the alternative the People should have a right to have their psychiatrist examine defendant. The court, without comment on the prosecutor's request for an examination of the defendant, ruled that it would allow the defense testimony. Dr. Crane testified that at the request of defense counsel he interviewed defendant on May 15 and 22, 1978, as well as June 10, 1979, in order to evaluate that portion of his psyche having to do with memory. Defendant seems to have difficulty in grasping anything with any sophisticated words in it. Defendant had been subjected to a very comprehensive battery of psychological testing in January, 1975, which was months prior to his appearance before the Grand Jury. The tests administered to him included the Wechsler Adult Intelligence Scale, the Rorschach Test, the Bender-Gestalt Test and the Figure Drawing Test. Defendant was subjected to these tests because of some therapy he was undergoing and they were not related to the Grand Jury investigation. The test results showed that defendant suffered from organic involvement—physical malfunction—in his ability to memorize things. As to I.Q., defendant was in the dull normal range. The memory tests do not come out with an opinion but with a numerical score—tester bias is not allowed. Dr. Crane then expressed the

view that defendant's memory is seriously impaired and that defendant could not recall the facts he was questioned about before the Grand Jury. During cross-examination by the prosecutor, Dr. Crane conceded that the defendant is not so impaired that he could not have fooled him and that he did not know what defendant might or might not have remembered. After Dr. Crane completed his testimony, the defense called Dr. Soleyman Dayan, a clinical psychologist, to the stand. He testified that the defendant came to see him because of his wife's complaint that she asked him on many occasions to bring milk for the baby and he would always say he forgot. On January 13, 16 and 21, 1975 Dr. Dayan administered the Wechsler Adult Intelligence Scale, the Bender-Visual-Motor Gestalt Test and Figure Drawing and Rorschach Tests to the defendant. These tests took three days to administer although normally they take only an hour and a half to administer. The test results showed a dull normal range I.Q. and an impaired memory. As to memory and attention span he obtained seven points out of a possible 17. It was Dr. Dayan's view that defendant has an impaired memory. On cross-examination the prosecutor succeeded in getting Dr. Dayan to concede that he could be wrong although he continued to assert that tests show defendant has an impairment. The defendant presented two more witnesses and the court adjourned until the next day, Tuesday, June 19, 1979. When the court reconvened on Tuesday morning the People asked for an adjournment until Thursday morning so that they could obtain a psychiatric witness to review the tests to determine their validity and determine whether they would request that the defendant be examined by the People's expert in view of the fact that defendant's memory had been put in issue. The court agreed to adjourn until Thursday morning and to grant subpoenas to Drs. Crane and Dayan to turn over the test records so that they could be examined by the People's experts. Before the court reconvened on Thursday morning the People received Drs. Crane's and Dayan's records on defendant. When the court reconvened, the prosecutor asked to reopen cross-examination of Dr. Dayan on the ground that there were conclusions in his records that contradicted his testimony. The court denied the request. The prosecutor then stated that the People's psychiatrist would like a psychiatric interview with the defendant. The court granted the request with the proviso that the People's psychiatrist would be allowed "to testify only as to the facts which formulate the basis for his medical opinion or questions" of faulty memory caused by alleged brain disease. He would not be allowed to testify about any admissions made by the defendant during the examination. Defendant asserting his constitutional rights, refused to submit to an examination by the People's expert. The court thereupon indicated that it would have to strike the testimony of Drs. Crane and Dayan. The defense, in response, argued strenuously that before any testimony is stricken the People should show why they need an examination and that in any event there is no reason to strike Dr. Dayan's testimony which relates to objective tests given before defendant was ever called before a Grand Jury. Nevertheless, the court decided to strike Dr. Dayan's testimony as well as Dr. Crane's and the jury was instructed accordingly. Thereafter, the jury returned a verdict finding the defendant guilty of three counts of perjury in the first degree. The defendant, *inter alia,* contends that striking the testimony of Drs. Crane and Dayan was reversible error. I agree and hold that the defendant is entitled to a new trial. In my view there was no basis to require defendant to submit himself to an examination by the People's expert, and Criminal Term, in making such a ruling, violated defendant's privilege against self incrimination. Moreover, once the court

decided to admit the testimony of Drs. Crane and Dayan it was error to subsequently strike it. Finally, even if the striking of Dr. Crane's testimony was proper the same cannot be said for Dr. Dayan's. It is true that where a defendant raises a defense of insanity and presents expert testimony to that effect the People are allowed to have their expert examine the defendant in order to refute his psychiatric proof of insanity. The interposition of a plea of insanity waives the privilege against self incrimination (see *Matter of Lee v County Ct. of Erie County,* 27 NY2d 432, cert den 404 US 823; *People v Traver,* 70 Misc 2d 162). A plea of insanity is an allegation of lack of criminal responsibility (Penal Law, § 30.05). A defendant who intends to raise such a defense must give the People notice thereof (CPL 250.10). An examination of the defense raised by the defendant shows that it is not at all akin to an insanity defense. Unlike an insanity defense, there was no requirement that the defendant give the People any notice of it. The defense at bar is not one of lack of criminal responsibility. Rather the defendant, by the testimony of Drs. Crane and Dayan, was saying that he told the truth when he testified before the Grand Jury that he did not recall the events he was questioned about. In view of the lack of any notice requirement for the defense raised here and the dissimilarity between the instant defense and one of insanity, it is clear that they are not to be treated equivalently; the fact that an insanity defense results in a waiver of the privilege against self incrimination does not result in the waiver of such privilege here. Moreover, it cannot be said that the examination the People sought here was not of a nature as to constitute a violation of the privilege. The privilege against self incrimination proscribes testimonial compulsion but not that which merely makes a defendant the source of real or physical evidence *(Schmerber v California,* 384 US 757). By its very nature, the privilege is an intimate and personal one. It respects a "private inner sanctum of individual feeling and thought" *(Couch v United States,* 409 US 322, 327). It is clear that Criminal Term's directive to defendant to submit himself to the People's expert, if he wished to avoid having Drs. Crane's and Dayan's testimony stricken, constituted testimonial compulsion (see *Matter of Lee v County Ct. of Erie County, supra,* p 439) and the very violation of the " 'private inner sanctum of individual feeling and thought' " which is proscribed (cf. *People v Copicotto,* 50 NY2d 222, 229). Requiring a defendant to submit himself to a psychiatric examination obviously involves verbal responses reflecting the operation of his mind and makes him more than a source of real or physical evidence. Furthermore, violation of defendant's privilege cannot be justified on a theory that the People are being denied a fair opportunity to refute the defense presented. The People's rights were adequately protected by cross-examination of the doctors (cf. *People v Baier,* 73 AD2d 649). Accordingly, Criminal Term, in insisting that defendant submit himself to the People's expert, disregarded defendant's rights. In any event, even if the procedure adopted here did not violate defendant's rights a new trial would still be warranted. Shortly after Dr. Crane took the stand the People asked for an offer of proof. After it was given they asked to have their expert examine the defendant. The court did not rule on this request but allowed Dr. Crane to testify. After Drs. Crane and Dayan testified, the court ordered defendant to submit himself to the People's expert on penalty of having their testimony stricken. To present defendant with that choice *after* the doctors have testified obviously violates fundamental fairness. If the court was going to make admission of their testimony dependent upon defendant submitting himself to an examination by the People's expert, the defendant should have been presented with that alternative before their testimony was

admitted. Instead defendant was presented with the alternative after they testified. He opted to refuse an examination. This resulted in an instruction to the jury that the testimony of Drs. Dayan and Crane was stricken. The effect of such an instruction was obviously prejudicial and beyond the redemption of any curative instruction. Finally, even if the striking of Dr. Crane's testimony could be justified on the ground that his examination of defendant was solely for purposes of the trial and the defendant thereby opened the door for the People's request to have their expert examine the defendant, the same cannot be said for Dr. Dayan's testimony. Dr. Dayan examined defendant prior to the Grand Jury investigation and his examination was unrelated to any prosecution (see *United States v Baird*, 414 F2d 700, 707-708, cert den 396 US 1005). Accordingly, there was no justification for the decision to strike his testimony. For the foregoing reasons I vote to reverse the conviction and order a new trial for the defendant.