■ In the Matter of DONNA H., A Person Alleged to be a Juvenile Delinquent, Appellant.—Order, Family Court, Bronx County, entered March 24, 1978, adjudicating appellant a juvenile delinquent and placing her with

Division for Youth, Title III, modified, on the law, without costs or disbursements, to the extent of vacating the determination as to the weapons count as an inclusory concurrent count, and the proceeding is remitted to the Family Court for a new dispositional hearing; and otherwise the determination is affirmed. On January 31, 1978, appellant was temporarily in the care of the Hegeman Diagnostic Reception Center. An altercation ensued during which appellant threw a garbage pail cover and wash bucket at a houseparent, gashing his left wrist to the point where a number of stitches were required to close the wound. By consequence, she was charged with juvenile delinquency in that the acts, if committed by an adult, would have constituted assault in the second degree and criminal possession of a weapon in the fourth degree. A hearing was held by the Family Court, which resulted in a finding of juvenile delinquency bottomed on the holding that the acts charged had been committed. Other than to point out that the weapons charge is an inclusory concurrent count (CPL 300.30, subd 4), and should, therefore, be dismissed (People v Grier, 37 NY2d 847), appellant takes no issue with this finding. Her complaint flows from the placement made. At the dispositional hearing, all of the interested parties were in agreement that placement with the Elan School, an agency located in Poland Springs, Maine, was the best possible. The probation officer reported that the agency was an accredited one and was singularly successful in its handling of delinquent children. However, he asserted that "officially" he could not make the recommendation because approval could not be obtained from the appropriate authorities unless first it was ascertained that no New York State agency capable of dealing with the child would take her. He therefore recommended that she be referred to the Division for Youth (DFY), for evaluation. The Law Guardian stated that he had no objection to this procedure provided that appellant be held in a shelter rather than in detention during the period of evaluation. When the probation officer voiced objection "to anything but detention", the court noted that the period during which appellant could be kept in detention had expired and, in light of the probation officer's objection to a shelter he had no alternative but to proceed to disposition. He thereupon remanded her to DFY, Title III. As we recently point out in Matter of Andre L. (64 AD2d 479, 481), the law dealing with placement creates "a dual standard requiring that the court take into account two fundamental concerns, i.e., the needs and best interests of the juvenile balanced with the need to protect the community against perpetrators of serious crimes. The appropriate remedy is the least restrictive confinement consonant with both purposes." Here, all interested parties were in accord as to the best technique for serving these ends. We cannot permit the beneficial ends sought to be achieved by the law to be frustrated by a dispute over whether evaluation shall take place in a shelter or a detention facility. Accordingly, we remand for a further dispositional hearing. We note that appellant's mother was not present at the fact-finding hearings. As a result, the court was required to appoint a guardian ad litem (Family Ct Act, § 741, subd [a]). In order not to delay the hearing, the court appointed a court officer to discharge that function. While we do not think that this was sufficient in this case to warrant overturning the holdings of the fact-finding hearing, particularly in light of appellant's failure to take issue with that phase of the proceeding, we are constrained to indicate our disapproval of the procedure followed. While we recognize that courts must sometimes improvise in order to prevent the waste of all too scarce judicial time, the designation of someone who, in relation to the child involved, is a stranger, to act in loco parentis cannot be permitted. Concur—Murphy, P. J., Bloom and Lane, JJ.

Silverman, J., dissents in part in a memorandum, as follows: I would affirm the disposition made by the Family Court. The Family Court Judge made a conscientious, painstaking effort extending over three days of hearings to arrive at a disposition which would give due consideration to the two fundamental concerns mandated by section 711 of the Family Court Act, the needs and best interests of the juvenile, and the need for protection of the community. As a result of this, he finally resolved that the proper disposition was to place appellant with the Division for Youth, Title III, for 18 months, with a recommendation that the division seriously consider the possibility of placing appellant in Elan School. I cannot say that the Family Court Judge was wrong in this disposition. Nor do I think I know as much about the available alternatives as he did, let alone so much more as to justify substituting my judgment for his. This is not a case like *Matter of Andre L.* (64 AD2d 479) in which neither the court nor the probation officer had taken into account the availability of other appropriate facilities that would meet the needs. Here the court exhaustively considered the appropriate alternatives. The court questioned in great detail the Law Guardian and the probation officer as to their views with respect to different types of available placement. There was ample evidence to justify the disposition. Appellant had previously been adjudicated a juvenile delinquent based on findings of unauthorized use of a vehicle (Penal Law, § 165.05) and reckless endangerment in the second degree (Penal Law, § 120.20). The fact-finding determination in the present case found that during the previous placement she had made an assault with a garbage pail and wash bucket causing physical injury, which would have constituted assault in the second degree if committed by an adult. She was described as being "thoroughly and adamantly uncooperative." A hospital report recommended that she be placed "in a secure state training school because respondent cannot be contained in an open setting. The severity of her antisocial actions make her a constant danger to other people." Appellant had been rejected by a number of agencies. A psychologist for the Family Court Mental Health Services had concluded that appellant had a hostile and explosive personality and represented a distinct threat to the community. The psychologist and the probation officer both recommended that she be placed in a secure facility. On the basis of all of this, the court made its disposition. There is no evidence that Title III facilities do not provide appropriate programs suitable for appellant. (Cf. *Matter of Lavette M.*, 35 NY2d 136, 141.) Another troublesome aspect of this case is due to the time that has elapsed between the dispositional order here reviewed and the implementation of our decision. The order appealed from was made on March 24, 1978; it placed appellant with the Division For Youth, Title III, for a period of 18 months with the recommendation stated. The court directed a probation report in a month's time to determine the propriety of ordering different placement. Thereafter, we are informed, appellant was placed in the Tryon School, a Title III facility. More than a year has gone by since then (the appeal was submitted to us almost exactly a year after the order of disposition). It is doubtful that the new dispositional hearing, which the majority is ordering, will take place in less than another couple of months. In the interim, no Joshua has been conveniently available to bid the sun stand still. What then is to be accomplished by the new dispositional hearing? Surely we are not concerned with what should be done over a year ago. We can only be properly concerned with what should be done now. But the Family Court has and is exercising continuing supervision anyhow. It ordered a report

within a month. Extension of the placement would require a further order by the court. (Family Ct Act, § 756, subd [b].) A report is required to be submitted by the place in which the child has been placed at the end of a year of placement, making recommendations. The Division For Youth may discharge the child whenever it deems such discharge to be in the best interest of the child and there is reasonable probability that the child can be released without endangering the public safety. (Executive Law, § 525.) In these circumstances, I do not know what is to be accomplished by the new dispositional hearing which we are ordering. We are informed that such a hearing would necessarily disrupt whatever program the child is in now. Like the majority, I am puzzled by the appointment of a court officer as guardian ad litem. In all these cases there is already a Law Guardian appointed by the court to protect the interests of the juvenile. I can see some function to be performed additional to that of the Law Guardian by a guardian ad litem who is a parent, or a member of the family, or someone having some personal relationship with the juvenile. But where such a person is not available, I must say I cannot see what useful function, beyond that already performed by the Law Guardian, is to be performed by a guardian ad litem who is a stranger to the juvenile. But if he has any functions, I do not see how we can expect them to be performed by a uniformed court officer. It seems most unlikely that a uniformed court officer working in the court of a Family Court Judge would instruct the Law Guardian to take an appeal from an order of that Family Court Judge. In the present case, of course the appeal was taken quite nicely by the Law Guardian without the instructions of the "guardian ad litem." However, for the reasons I have indicated all of that is in the past.