OPINION OF THE COURT
Chief Judge Cooke.
 We hold that subdivision 2-a of section 753-a of the Family Court Act, which provides for mandatory restrictive placement of the State’s most violent juvenile offenders, is constitutional. However, an error in the fact-finding stage of this proceeding mandates reversal of appellant’s juvenile delinquency adjudication.
The statute under attack here provides that, where a youth between 14 and 15 years of age is found to have committed a designated felony act involving the infliction of serious physical injury upon a person who is 62 years of age or more, the Family Court is required to order restrictive placement of the juvenile in a secure facility operated by the Division for Youth *333 (Family Ct Act, § 753-a, subd 2-a). After a fact-finding hearing, appellant was found to have committed acts which, if committed by an adult, would have constituted the crimes of robbery in the first degree (Penal Law, § 160.15) and burglary in the second degree (Penal Law, § 140.25), both designated felony acts (Family Ct Act, § 712, subd [h]). Since appellant was found to have caused serious physical injury (Penal Law, § 10.00, subd 10) to a 73-year-old woman, at the subsequent dispositional hearing Family Court was obliged to order a restrictive placement (Family Ct Act, § 753-a, subd 2-a). On this appeal, appellant maintains that the mandatory nature of his restrictive placement denied him due process and equal protection of law.
Before addressing the constitutional challenge, the relevant statutory scheme should be outlined. Alarmed at what was perceived to be a dramatic increase in crime by seemingly remorseless juveniles, and in an attempt to deal more effectively with these juveniles without surrendering them to the criminal justice system, the Legislature enacted the Juvenile Justice Reform Act of 1976 (L 1976, ch 878). The purpose of the juvenile justice system was redefined to direct the courts to consider "the needs and best interests of the [juvenile] as well as the need for protection of the community” (Family Ct Act, § 711; see People ex rel. Wayburn v Schupf, 39 NY2d 682, 687). The act accommodates the needs of the juvenile and society at large by affording the offender intensive rehabilitative treatment, albeit in a setting removed from his previous environment (see, generally, Gottfried, Barsky & Baron, Juvenile Crime: Report of Recommendations and Summary of Findings, NYS Assembly Comm on Child Care [1976]).
Perhaps the most significant change made by the Juvenile Justice Reform Act is availability of restrictive placements for those juveniles found to have committed a designated felony act. In most cases, restrictive placement is ordered where the court, after a dispositional hearing, finds that the juvenile requires such placement (Family Ct Act, § 753, subd 1; § 753-a, subd 2). But where a juvenile is found to have committed a designated felony act which causes serious physical injury to a person 62 years of age or older, the court must restrictively place the juvenile without regard to the availability of other alternatives for treatment (id., § 753-a, subd 2-a). The majority of restrictive placements are composed of three distinct phases during which the juvenile is afforded rehabilitative and thera *334 peutic treatment: an initial period of six months to one year in a "secure facility” (Executive Law, § 515-a), followed by a second phase of the same duration in a residential facility and concluding with "intensive supervision” until expiration of the three-year placement period. During the placement period, the juvenile may not be discharged from the custody of the Division for Youth, but placement may be extended, after a hearing, until the juvenile reaches 21 years of age (Family Ct Act, § 753-a, subd 4; for a more detailed analysis of the Juvenile Justice Reform Act of 1976 see 45 Fordham L Rev 408).
 Appellant maintains that the mandatory aspect of subdivision 2-a of section 753-a transgresses both his procedural and substantive rights. This argument proceeds on the premise that during the adjudicatory stage of a juvenile proceeding the juvenile surrenders some of the basic rights which are available in the criminal justice system. Notable among these are the right to trial by jury (McKeiver v Pennsylvania, 403 US 528), bail (People ex rel. Wayburn v Schupf, supra) and indictment (see Matter of Vega v Bell, 47 NY2d 543). This relinquishment, appellant maintains, imposes a correlative duty on the State to furnish treatment in the least restrictive setting appropriate to the juvenile’s individualized needs as well as the needs of the community. The statute, however, renders the presentation of evidence at the dispositional hearing an empty ritual except for the limited purpose of determining the initial duration of secure confinement. This loss of liberty with no evidence that the restrictive placement was necessary for community safety or appropriate for his needs constitutes, according to appellant, a deprivation of due process.*
In assessing appellant’s due process challenge, it is well to remember that the primary thrust of article 7 of the Family Court Act is treatment and rehabilitation, rather than deterrence or retribution — concerns traditionally associated with criminal law (see Mack, The Juvenile Court, 23 Harv L Rev *335 104). Hence, in most cases the Legislature has chosen not to brand the juvenile who commits an act which would otherwise be a crime a criminal, but recognizes that he is a person not fully responsible for his conduct (see Matter of Samuel W., 24 NY2d 196, revd on other grounds sub nom. Matter of Winship, 397 US 358; but see L 1978, chs 478, 481). It has taken a path designed not solely to punish the malefactor but to extinguish the causes of juvenile delinquency through rehabilitation and treatment (see McKeiver v Pennsylvania, supra).
At the same time, however, it must be remembered that proceedings such as this are, at the very least, quasi-criminal in nature (Matter of Gregory W., 19 NY2d 55, 62). While supervision and even confinement of the juvenile is aimed primarily at rehabilitation, the incapacitative and deterrent aspects of restrictive placement cannot be disguised. Any restrictive placement necessarily combines, in varying degrees, elements of deterrence, punishment and rehabilitation. Enactment of the Juvenile Justice Reform Act, where the Legislature recognized that confinement of juveniles, whose conduct endangers the public safety as a legitimate State concern, acknowledges this fact. Good intentions on the part of the court and flexible vocabulary as to the goals of the juvenile justice system do not alter this reality.
Thus, restrictive placement is a deprivation of liberty which the State may not accomplish without first affording appellant due process of law. But given a finding beyond a reasonable doubt (Family Ct Act, § 744, subd [b]), that appellant committed acts which would have been felonious if committed by an adult, appellant’s liberty interest has been diminished to the point where utilization of a rehabilitative program requiring restrictive placement is not violative of due process unless the selection of that program lacks a rational basis or its application constitutes cruel and unusual punishment (cf. Meachum v Fano, 427 US 215, 224). Thus, the notion that, in the postadjudicative stage, therapeutic treatment in the least restrictive setting is the cornerstone for an adjudication of juvenile delinquency is rejected. It is unnecessary to decide whether there is some right to treatment within the confines of the due process clause (compare Matter of Lavette M., 35 NY2d 136, 142, and Rouse v Cameron, 373 F2d 451, 452-456, with O’Connor v Donaldson, 422 US 563, 578-579 [Burger, Ch. J., concurring]), as it is undisputed that restrictively placed juveniles are indeed being afforded treatment.
*336 It may properly be taken that the Legislature concluded, in the light of the statistics and other evidence available to it, that the increase in juvenile crime and in crimes of violence against senior citizens were causally related. "There is generally a very strong presumption that 'the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation’ ” (Matter of Taylor v Sise, 33 NY2d 357, 364, quoting Matter of Van Berkel v Power, 16 NY2d 37, 40). On this basis it is rational further to conclude that juvenile offenders who perpetrate crimes of violence on older persons, most exposed to depredation and least able to protect themselves, may properly be classified for treatment purposes in a different category from other juvenile offenders, and that their rehabilitation may best be attempted, and hopefully accomplished, in the controlled setting of restrictive placement. At the same time and incidentally the legitimate interests in the protection of the community and particularly its older citizens will be advanced. It is for the Legislature to determine the proper environment for that treatment within constitutional bounds; the courts are ill-equipped to decide which of the myriad of views regarding the treatment of juveniles best serves the interest of all parties concerned (cf. Jones v Beame, 45 NY2d 402, 408).
In making this determination, moreover, the Legislature is certainly competent to take into account not only the rehabilitative needs of the juvenile himself, but also the nature . of his offense and the interests of the community. Thus, in mandating restrictive placement for youths such as appellant, the Legislature may be assumed to have recognized that for many juveniles treatment in the very environment that spawned the delinquency is inimical to vigorous rehabilitative efforts. For some, treatment in an institution removed from the setting in which the previous misconduct occurred is a more suitable alternative. Mandatory restrictive placement of those who prey on the elderly additionally affords the community a measure of protection from its most violent children while affording those children the individualized treatment they so desperately require (see Executive Law, §§ 515-a, 516).
Appellant’s equal protection argument is bottomed on the assumption that the discriminatory treatment visited upon juveniles who perpetrate crimes against the elderly may only *337 be justified upon the showing of a compelling State interest. Appellant thus maintains that strict scrutiny is the proper test. However, this test is invoked only where the challenged law classifies persons along suspect lines, e.g., race, or where it impinges upon some fundamental constitutional right such as liberty (see, e.g., Loving v Virginia, 388 US 1; People ex rel. Wayburn v Schupf, 39 NY2d 682, supra [pretrial detention of juveniles]). Appellant concedes that subdivision 2-a does not involve any suspect class and it is obvious that the juvenile delinquency adjudication itself constitutionally diminished appellant’s fundamental liberty interest. Since only the extent and duration of that deprivation is at issue here, there is no occasion to apply the strict scrutiny standard of review. Rather, the inquiry is whether it was rational for the Legislature to have afforded juveniles who commit crimes of violence against the elderly treatment disparate from those who perpetrate crime against the general populace (see Meachum v Fano, 427 US 215, supra).
In enacting subdivision 2-a the Legislature was entitled to take into account not only the rehabilitative needs of juveniles but the special problems juvenile crime poses to the elderly as well. As stated, the elderly are peculiarly susceptible to crimes of violence for age has, to a large extent, diminished their physical capacities marking them out as easy prey for the criminally disposed. The Legislature thus could reasonably conclude that juveniles who prey upon the elderly present a problem requiring unique treatment. In this regard, it is important to recognize the means selected by the Legislature are directed at conduct deemed to present a special and serious problem and amounts to a considered policy choice by that branch of government vested with the power to make that selection (cf. Corbitt v New Jersey, 439 US 212).
Equal protection does not demand that classifications be ideal. Indeed where the Legislature undertakes to act in areas fraught with rehabilitative and sociological uncertainties, courts are reluctant to intervene. This is true in part because legislative policy entails an assessment of contemporary standards and community needs. This deference is enhanced with the recognition that specification of the nature of treatment to be afforded miscreant juveniles is peculiarly one within legislative parameters.
Notwithstanding the constitutionality of subdivision 2-a of section 753-a of the Family Court Act, an error of magni *338 tude in the fact-finding stage of this proceeding requires reversal of appellant’s delinquency adjudication.
Prior to the fact-finding hearing, Family Court was aware that both appellant and his alleged accomplice, one Darrell R, had made statements inculpating themselves in criminal activity. Though both statements were subsequently ruled voluntary and hence admissible, their content was markedly different. Darrell admitted that on the date complainant was robbed he had taken $15 from an elderly woman matching complainant’s description at her address in a manner consistent, to a fault, with that in which complainant was robbed. Darrell indicated that appellant had assisted him in perpetrating the robbery. Appellant’s statement, however, was appreciably less detailed than that of his cohort. While appellant admitted taking an undisclosed sum of money from a woman, he did not identify the date, time, location or the victim of the transaction. Moreover, while Darrell admitted striking complainant in a manner consistent with her testimony, appellant specifically denied inflicting any injuries upon the victim. Complainant could identify neither of her attackers.
Family Court denied appellant’s motion to sever and, over strenuous objection, ruled that the confessions were interlocking so that the two statements could be "read together and * * * supply the sufficient connection” to the offenses charged in the petition. Even given the dubious assumption that the two statements were in fact interlocking (see People v McNeil, 24 NY2d 550; Parker v Randolph, 442 US 62), it is a fundamental principle of evidence that, with limited exceptions not relevant here, a confession may be considered only against its maker (People v Payne, 35 NY2d 22, 26; People v Jackson, 22 NY2d 446, 450; People v Ryan, 263 NY 298, 305; People v Fisher, 249 NY 419, 432). In some cases, the court may avoid the necessity for a severance, by forcefully cautioning the trier of fact that admissions of one defendant may not be considered against another (compare People v Safian, 46 NY2d 181, with Bruton v United States, 391 US 123).
Here, however, rather than receiving each statement into evidence only against its maker, the court expressly stated that Darrell’s confession could be used to supply critical details absent from the statement of petitioner. This ruling mandates reversal.
Accordingly, the order of the Appellate Division should be *339 reversed, without costs, and the matter remitted to Family Court, Kings County, for a new hearing.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

 The essence of procedural due process is that a person must be afforded notice and an opportunity to be heard before government may deprive him of liberty or a recognized property interest (Memphis Light, Gas & Water Div. v Craft, 436 US 1, 9; Board of Regents v Roth, 408 US 564, 577). Since Family Court may not order restrictive placement until after it affords a juvenile a statutorily required dispositional hearing on notice (Family Ct Act, §§ 743, 746, 753), the statute fully comports with procedural due process strictures.