*433 OPINION OF THE COURT
Joyce L. Sparrow, J.
After a hearing respondent was found to have committed an act which if committed by an adult would constitute the crime of assault in the second degree, to wit, an assault on a 69-year-old female neighbor. The court-ordered probation investigation and report (I & R), recommended supervision, and a full diagnostic study (MHS), and recommenced placement. The Law Guardian and the presentment agency disagreed as to whether confinement was required although there was no dispute as to the need for supervision and/or treatment. A full dispositional hearing was held wherein both the psychologist and the probation officer testified. In addition, the victim, several of respondent’s other neighbors, the Legal Aid Society social worker and the Division for Youth court liaison officer also testified.
This matter presents the novel issue of how the recently enacted legislation regarding Federal funding for placement facilities for some delinquents affects the dispositional decision, and more particularly, whether it is appropriate to place a respondent out of his home after his first finding, in view of this recent legislation. (L 1985, ch 880, amdg Family Ct Act §§ 315.3, 351.1, 352.2, 353.2; Social Services Law § 372.)
Fashioning a disposition for a youth in a delinquency proceeding is far different from the adult criminal sentencing decision. (Matter of Steven E. H., 124 Misc 2d 385.) The court must consider both the needs and best interest of the individual respondent in conjunction with the need for protection of the community. (Family Ct Act §§ 301.1, 352.2.) It is clear that the process requires much more than a consideration of past and present criminal behavior, but also a determination of the respondent’s potential for dangerousness and whether a need for treatment exists. In addition, the court must consider the respondent’s family’s capacity to supervise him, and the availability of appropriate remedial services. (Matter of Katherine W., 62 NY2d 947; Matter of William J., 120 AD2d 529; Matter of Nicholas W., 45 AD2d 850.)
There is a fundamental concept in juvenile justice philosophy that in fashioning this customized disposition, a respondent is entitled to the least restrictive dispositional alternative. This legal concept found expression in numerous decisions prior to its statutory codification in Family Court Act article 3 in 1983. (Matter of Jose B., 71 AD2d 551; Matter of *434 Cecil L., 71 AD2d 917; Matter of Donna H., 70 AD2d 521; Matter of Andre L., 64 AD2d 479; see also, Family Ct Act §352.2 [2] [a].)
In 1979, the Child Welfare Reform Act was enacted with the purpose of compelling the child welfare system to provide preventive services to families rather than reflexively placing children in foster care. (L 1979, ch 610.) This country faces a problem of national proportion due to the break up of families. The Federal Government, by virtue of Social Security Act, title IV, part E (42 USC § 670 et seq.), in an effort to deter the removal of children from families, makes receipt of Federal reimbursement to foster care facilities dependent on the social service agencies making appropriate efforts to prevent unnecessary placements out of the home.
In order to implement the Child Welfare Reform Act and title IV, part E in delinquency proceedings, the following language was added by Laws of 1985 (ch 880, § 4) to Family Court Act § 352.2 (2) (b): "In an order of disposition * * * which order places the respondent with the commissioner of social services or the division for youth for placement with an authorized agency or class of authorized agencies or in such schools, centers or youth centers operated and maintained by the division for youth as are eligible for federal reimbursement pursuant to title IV-E of the social security act, the court shall determine that continuation in the respondent’s home would be contrary to the need for protection of the community and that where appropriate, and where consistent with the need for protection of the community, reasonable efforts were made prior to the date of the dispositional hearing to prevent or eliminate the need for removal of the respondent from his home. ” (Emphasis added.)
This paragraph, together with a review of the prior law regarding juvenile delinquency dispositions, leads to the obvious conclusion that the decision-making process of the court remains unaffected by this amendment. Indeed, the language in the new legislation essentially mimics the prior statute. The new amendment requires that services to prevent placements are to be provided only where reasonable and appropriate under the circumstances of each case. If the community requires protection and/or the respondent needs services that he cannot receive in his home, placement is then appropriate. This differs in no substantial fashion from the prior requirement that the court choose the least restrictive appropriate disposition, consistent with the needs of the respondent and *435 protection of the community. (Family Ct Act § 352.2 [2] [a].) The amendment was simply added to bring juvenile delinquency procedure into compliance with Federal regulations, in order to keep the State from losing Federal reimbursement to State foster care facilities.*
The final question relates to the disposition for this respondent considering that he has no prior findings. The probation officer testified that it was his understanding, from what he was instructed, that amended Family Court Act § 352.2 (2) (b) requires that he be precluded from recommending placement after a first finding. He believes that only after a violation of an order of probation may the respondent be placed. He testified nevertheless, that, in fact, it is his opinion that this respondent indeed poses a threat to his community. The court can discern the legislative intent from the legislative findings and declarations of Laws of 1985 (ch 880, § 1), which provides in relevant part: "It is the intent of this legislation to ensure, within constraints imposed by the nature and circumstances of the offense committed, that all reasonable efforts be made to prevent unnecessary out of home placement of delinquent youths. It is understood that this legislation shall not interfere with the presentment agency’s paramount responsibility to protect the safety of the community. Therefore, nothing contained in this act shall be construed to prevent placement where such placement is consistent with the need for the protection of the community. ” (Emphasis added.)
The court heard the credible testimony of the 69-year-old victim during a probable cause hearing, fact-finding hearing and, even more revealing testimony during the dispositional hearing. She described the respondent’s pattern of violent behavior and destructiveness to the neighborhood, to her neighbors and most particularly directed to herself. The court’s finding in this case is to a violent assault. The psychologist indicated that the respondent is a passive aggressive youth who is unrepentent and uncooperative. It was his opinion that the respondent would persist in his acting out behavior and would be likely to continue to do as he pleases. The evidence indicated that the family situation lacks adequate supervisory controls and, in addition, the respondent’s school record reveals serious problems in attendance, behavior and academic performance.
*436 Clearly, this court had ample evidence presented to it to mandate placement of this respondent out of his home and out of his community. Both this court and the Legislature agree that the community need not wait for a tragedy to occur as an antecedent to the court’s placement of a respondent out of his home. (Matter of Douglas R. S., 123 AD2d 868.)
It is interesting to note that if the respondent had committed a more serious assault, which could have resulted in a designated felony finding, the court would have been mandated to place the respondent in a restrictive placement merely because of the victim’s age. (Family Ct Act § 353.5 [3].) This demonstrates the clear legislative intent to deal harshly with youths who prey upon their elderly neighbors. (Matter of Quinton A., 49 NY2d 328.)
Accordingly, after an exhaustive exploration of the placement alternatives, including contacts with and rejections from private facilities, the respondent is placed with the Division for Youth, title 2, out of region for up to 18 months. The request for a six-month restriction to the facility is denied. (Family Ct Act § 353.3 [9].) However, a final order of protection for 18 months is granted to the victim. A violation by respondent of the final order of protection will constitute a violation of the order of disposition which may result in a more secure placement, as well as any other penalty available after the respondent reaches his 16th birthday.

 See July 15, 1985 State Budget Department memorandum in support of Laws of 1985 (ch 880), which indicates that failure to enact will jeopardize the State’s receipt of $7 million in Federal title IV, part E reimbursement.