**Timothy C. WEBSTER, Ismael Aben,[1] Michael Perkins, and Sixto Jansen, Plaintiffs,**

v.

**Marc L. CHEVALIER and Hubert J. Speckard, Defendants.**

**No. 93–CV–6495T.**

United States District Court, W.D. New York.

Oct. 19, 1993.

---

1. The correct spelling of the second defendant's surname appears to be "Abreu". The Clerk is directed to amend the caption.

Timothy C. Webster, pro se.

## DECISION and ORDER

TELESCA, Chief Judge.

### INTRODUCTION

The plaintiffs, proceeding *pro se*, have filed this action seeking relief under 42 U.S.C. § 1983 and have requested permission to proceed *in forma pauperis*. Plaintiffs' request to proceed as poor persons is granted. Plaintiffs have failed to plead a cause of action under § 1983, and for the reasons set forth below, the complaint is dismissed.

### BACKGROUND

Plaintiffs, incarcerated at the Groveland Correctional Facility, filed this claim pursuant to 42 U.S.C. § 1983 against both the Superintendent and the Institution Steward. They claim that their due process rights have been violated by a mandatory Groveland policy which requires that $40 be collected from inmates' income and placed in an escrow account. Although the total amount withheld will not exceed $40, and although the funds will be returned to them upon release, plaintiffs nonetheless complain that this withholding policy deprives them of their property, and of the $40 "gate money" from state funds, to which inmates were formerly statutorily entitled. Plaintiffs also complain that the New York State Department of Correctional Services is improperly collecting interest accumulated on wages which were "lagged" during the first fifteen weeks of 1992.

During their last year of incarceration, all funds received by inmates, whether from their wages or from outside sources, will be

assessed a 12.5% savings deduction and placed in an escrow account to the inmate's credit. Deductions are to remain in effect until the total amount accrued, when added to a "lagged" payroll in early 1992, reaches a total of $40 in each inmate's account. This balance will then be returned to the inmates upon their release from the Groveland Correctional Facility as "gate money."

## DISCUSSION

### I. Statutory Entitlement to "Gate Money"

Plaintiffs, who complain that the recently initiated withholding policy was instituted by Groveland officials for their own purposes, are unaware that it was the New York State Legislature which abolished the $40 "gate money" gift.[2] New York Correction Law now imposes upon the Corrections Commissioner the duty of ensuring that out-going inmates have sufficient funds upon being released from a prison facility:

The superintendent [of each facility] shall furnish to each inmate who shall be discharged or released from said facility by pardon, parole, conditional release or otherwise ... suitable clothing adapted to the season in which he is discharged ... and transportation to the county of his conviction or to such other place as the commissioner of correctional services may designate. *In addition, the commissioner shall take such steps as are necessary to ensure that inmates have at least forty dollars available upon release.*

New York Correct.L. § 125(2) (McKinney's Supplement 1993) (emphasis supplied). The highlighted passage, which took effect April 10, 1992, replaced an earlier provision which required that released inmates be given forty dollars from state funds. *Id.*, Historical and Statutory Notes.

■ Section 1983 provides a cause of action on behalf of individuals who have been deprived, by persons acting under color of state law, of rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983. Affording plaintiffs' complaint the liberal reading due pleadings filed by *pro se* litigants, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1973), it may be construed as articulating a claim that the plaintiffs have been deprived of two forms of property without due process of law in violation of the Fourteenth Amendment: the $40 gate money from the state, and the money being temporarily withheld, but otherwise due them, from income or from outside sources.

■ Procedural due process imposes constraints on governmental decisions which "deprive" individuals of property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. As the Supreme Court noted in *Board of Regents v. Roth*, "[p]roperty interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Plaintiffs are incorrect in claiming that Groveland officials are depriving them of property to which they would otherwise be entitled. It was the legislature of the State of New York which created the statutory entitlement of an inmate to receive $40 upon leaving the prison system, and it was subsequent legislative action which cancelled the State's contribution to the entitlement. Accordingly, they have failed to articulate a claim against Groveland officials which is cognizable under § 1983.

■ Moreover, there is no suggestion in the complaint that the New York Legislature violated any substantive limitations on its power in abolishing the statutory entitlement

---

**2.** In their Complaint, plaintiffs state that "[s]ince none of us have seen any E-mail from Albany on this issue nor seen any news that Legislature has taken the $40 gate money away from us we do agree that *the facility has initiated this policy* to satisfy there [sic] needs as well as the states [sic]...." (emphasis supplied). Plaintiffs also complain that "[s]ince this policy also includes the monetary wages that have been lagged from us earlier this year the procedure is still illegal because the lagged pay was to be given to all outgoing inmates *on top of the $40 gate money* the state requires us to leave with." (emphasis supplied).

of $40 provided by taxpayer funds. The New York Constitution provides that "[t]he legislative power of this state shall be vested in the senate and assembly." Article 3, § 1. The Legislature is vested with supreme authority to pass the ultimate budget, including amending any laws concerning the disbursement of funds, Article 7, § 3, and thus it is by now well settled that "[t]he law-making power has the sole authority over the subject of taxation and the appropriation of money," *People v. Tremaine,* 252 N.Y. 27, 38, 168 N.E. 817 (1929), *quoting Clark v. State,* 142 N.Y. 101, 104, 36 N.E. 817 (1894).

█ There is a very strong presumption that the legislature investigated and determined the need for, or desirability of, the legislation it enacts. *Matter of Quinton A.,* 49 N.Y.2d 328, 336, 425 N.Y.S.2d 788, 402 N.E.2d 126 (1980) (citations omitted). Thus, statutes, such as the current version of § 125(2) of the Corrections Law, are presumed to be constitutional and the heavy burden of demonstrating that a statute is unconstitutional rests on the party seeking to invalidate the statute. *People v. Bright,* 71 N.Y.2d 376, 382, 526 N.Y.S.2d 66, 520 N.E.2d 1355 (1988) (citations omitted). In the absence of such proof, this Court interprets the Legislature's decision to cease paying "gate money" from the public fund as a legitimate exercise of legislative power pursuant to Article 7, § 3 of the New York Constitution, and not a deprivation (i.e., a taking without due process) which is prohibited by either the federal or state constitutions.

## II. Withholding of Plaintiffs' Wages and Outside Source Income

The policy to withhold inmate wages and funds from outside sources was implemented by corrections officials in accordance with the legislature's directive to "take such steps as are necessary to ensure that inmates have at least forty dollars available upon release." N.Y.Correct.L. § 125(2). The issue presented is whether the defendants have "deprived" the inmates of property without due process of law by collecting and earning interest on their funds until the total of $40 has been accumulated for "gate money."

█ It is clear that the "property" which plaintiffs' claim is being taken unconstitutionally is the *use* of 12.5% of monetary payments they would have otherwise received while incarcerated, until a total of $40 has aggregated in each plaintiff's escrow account. While any significant deprivation of property by governmental action must be attended by notice and an opportunity to be heard, *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 339–40, 89 S.Ct. 1820, 1821–22, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring), the Court considers the deprivation complained of by plaintiffs, whether it be the withheld income from any source, or the interest which could be earned on those funds in one year or less, to be of a *de minimis* nature. *See Sniadach,* 395 U.S. at 342, 89 S.Ct. at 1823. This is not a case such as that described in *Sniadach,* where garnishment of wages in advance of judgment imposed a tremendous hardship on wage earners with families to support. The withholding in this case is limited to 12.5% of each receipt of funds, not to exceed a total of $40. Although plaintiffs would understandably prefer not to have any income withheld from them, and would prefer to have their "gate" money provided by the taxpayers of the State of New York and not from their own funds, the withholdings complained of will not leave them in the same position as the wage earners in *Sniadach,* because they will still be fed and housed at taxpayers' expense.

█ Moreover, even if the deprivation were not *de minimis,* and while even a temporary, nonfinal deprivation of property is nonetheless a "deprivation" under the terms of the Fourteenth Amendment, *Sniadach,* 395 U.S. at 339–40, 89 S.Ct. at 1821–22, there are limitations on an inmate's due process rights as a consequence of incarceration and its attendant circumstances. *See Hewitt v. Helms,* 459 U.S. 460, 465, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983) (while "no state may 'deprive any person of life, liberty, or property, without due process of law,' it is well settled that only a limited range of interests fall within this provision.") As the Supreme Court stated in *Wolff v. McDonnell,*

the fact that prisoners retain rights under the Due Process Clause *in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed* .... In sum, there must be a mutual accomodation between institutional needs and objectives and the provisions of the constitution that are of general application. 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) (emphasis added); *see also Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.").

The New York State legislature has directed corrections officials to ensure that inmates housed in state prisons are to have at least $40 when released from incarceration, and defendants' policy of withholding funds from inmates is narrowly tailored to achieve that authorized objective. Nor is this a situation where prison officials are withholding a significant amount of income for *punitive* purposes. Prison officials have broad administrative and discretionary authority over the institutions they manage, *Hewitt,* 459 U.S. at 467, 103 S.Ct. at 869, and the withholding of funds without giving inmates an opportunity to be heard, solely for the purpose of providing plaintiffs with "gate" money, is a valid "restriction[ ] imposed by the nature of the regime to which [plaintiffs] have been lawfully committed." Plaintiffs' deprivation claim seeks, in the words of Justice Rehnquist, "to draw from the Due Process Clause more than it can provide." *Id.* Accordingly, plaintiffs have failed to plead a due process violation cognizable under § 1983.

## CONCLUSION

Plaintiffs request to proceed *in forma pauperis* is hereby GRANTED, and the complaint is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(d). *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). For the reasons set forth above, I hereby certify that any appeal from this Order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a), and

leave to appeal to the Court of Appeals as a poor person is hereby DENIED. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

ALL OF THE ABOVE IS SO ORDERED.