*435 Scileppi, J.
We have been called upon to decide questions relating to the effect of a plea of not guilty by reason of insanity on a defendant’s constitutional rights.
In 1964, Rufus Lee, petitioner herein, was indicted for the murder of two women which occurred on November 5, 1964, two days after his release from a mental institution. In February, 1965, a psychiatric examination was ordered by a County Court Judge pursuant to section 658 of the Code of Criminal Procedure and Lee, thereafter, on July 30, 1965, pleaded not guilty by reason of insanity. Prior to the trial, the court found that Lee was competent to stand trial.[1] At the trial in December, 1965, the two court-appointed psychiatrists testified on Lee’s behalf that, on the basis of the above referred to examination and a latter one shortly before trial, he suffered from a “ schizophrenic psychosis, paranoid type ” and that as a result of this mental disease or defect, Lee lacked substantial capacity to know or appreciate either the nature or consequences of his conduct or that it was wrong. This testimony was corroborated by a third psychiatrist who had also examined Lee prior to trial. However, these physicians also admitted that it was possible for such a person to act rationally at times. In addition, the People called a psychiatrist who testified that on the basis of an examination of Lee’s hospital records, Lee was sane. The jury found the defendant guilty, but on appeal, the Appellate Division in February, 1968, ordered a new trial on the ground that the People had not proven sanity beyond a reasonable doubt and for the further reason that the verdict was against the weight of the evidence (29 A D 2d 837).[2] Lee again pleaded not guilty by reason of insanity and in preparation for the new trial, the District Attorney’s motion for a mental examination was granted by the County Court in February, 1969. Defendant, asserting his privilege against self incrimination, refused to submit to the examination and was found in contempt of court. The Appellate Division reversed the contempt order [32 A D 2d 885] and the County Court once again granted the District Attorney’s application for an *436 examination to be held on September 19, 1969. This order provided that defense counsel and an assistant district attorney could be present at such examination and further directed that:
“ Defendant, or defendant’s attorney, shall note his objections for the record and such objection shall be passed upon by the Trial Court prior to the trial of this indictment; and it is, further
‘ ‘ ordered, that in the event that this defendant shall refuse to answer questions deemed pertinent by the designated psychiatrists, then this Court will entertain a motion by the People of the State of New York to strike defendant’s defense of insanity and deny the defendant the right to call psychiatric witnesses in his behalf ”.
On the advice of counsel, petitioner refused to answer questions concerning his behavior on the day of the crime and those relating to his conduct in October, August and July of 1964. Absent defendant’s answers to their questions, the psychiatrists were unable to proffer an opinion as to Lee’s capacity to commit the crime[3] and on motion of the District Attorney, the County Court ordered that Lee’s plea of not guilty by reason of insanity be stricken; that he be precluded from offering psychiatric evidence on his behalf; and that the matter proceed to trial. Lee, thereupon commenced in the Appellate Division, the instant article 78 proceeding in the nature of prohibition seeking an order preventing the trial court from striking his insanity defense and from directing that he proceed to trial without being able to present evidence of his insanity. The Appellate Division vacated the order striking the defense, but directed that Lee submit to another mental examination without the presence of nonmedical personnel and the matter is here on cross appeals from the Appellate Division order.
The threshold question presented is whether an article 78 proceeding in the nature of prohibition is an appropriate vehicle to raise the questions presented herein. Although the use of the writ of prohibition has usually been limited to cases where a court acts without jurisdiction (see, e.g., Matter of Hogan v. *437 Culkin, 18 N Y 2d 330, 335-336; People ex rel. Lemon v. Supreme Ct., 245 N. Y. 24; People ex rel. Safford v. Surrogate’s Ct., 229 N. Y. 495), it is equally true that “function of the writ * * * [is] not merely to restrain an unwarranted assumption of jurisdiction, but also to restrain an inferior court from exceeding its authorized powers in a proceeding over which it has jurisdiction.” (Matter of Hogan v. Court of Gen. Sessions, 296 N. Y. 1, 8; see, also, People ex rel. Jerome v. Court of Gen. Sessions, 185 N. Y. 504; Quimbo Appo v. People, 20 N. Y. 531; CPLR 7802, subd. [a]). Additionally, in Matter of Culver Contr. Corp. v. Humphrey (268 N. Y. 26, 39—40) we said that the writ is an extraordinary remedy which "does not issue where the grievance can be redressed by ordinary proceedings at law or in equity or merely to prevent error which may be readily corrected on appeal. (People ex rel. Mayor v. Nichols, 79 N. Y. 582; People ex rel. Hummel v. Trial Term, 184 N. Y. 30; People ex rel. Livingston v. Wyatt, [186 N. Y. 383] supra; People ex rel. Childs v. Extraordinary Trial Term, 228 N. Y. 463.) It is not available ordinarily as a method of premature appeal. Nevertheless, where the lower court is exceeding its jurisdiction and the writ or order furnishes a more effective remedy, it may be availed of although the error might be corrected by appeal.” In the instant case, the order striking the plea was clearly nonappealable to the Appellate Division; thus, if prohibition were not available to Lee, he would be forced to submit to trial without the benefit of his plea and if convicted raise his claim of privilege on his appeal from the judgment of conviction.
Although not all constitutional issues are cognizable by way of prohibition (see, e.g., Matter of Blake and Edstrom v. Hogan, 25 N Y 2d 747 [holding that the writ does not lie where the claim is a denial of the right to a speedy trial]; Matter of Kraemer v. County Ct., 6 N Y 2d 363 [holding that the issue of double jeopardy may be raised in a prohibition proceeding]; cf. People ex rel. Rohrlich v. Follette, 20 N Y 2d 297), it is our view that the question whether the court properly struck the plea under the circumstances presented herein is of such magnitude as to place this case within the ambit of the writ. Inasmuch as defendant contends that his privilege against self incrimination allowed him to refuse to co-operate at the *438 pretrial mental examination, a serious question as to whether the County Court’s order striking the plea was in excess of its jurisdiction is presented and we reach the merits. In so holding, we adhere to the view expressed in prior decisions of this court that the remedy of prohibition is an extraordinary one which is only available in rare cases such as the one at bar.
Petitioner Lee argues that the privilege against self incrimination allows a defendant, who pleads not guilty by reason of insanity, to refuse to answer questions put to him by court-appointed psychiatrists during a pretrial mental examination and that the court improperly struck the plea when defendant relied upon his privilege. Thus, we are called upon to determine whether the privilege obtains at an examination pursuant to section 658 of the Code of Criminal Procedure and if so, whether it is waived when a defendant interposes the defense of insanity.
These are not questions which lend themselves to facile solutions. The People have a right to expect that criminal transgressors will be brought to justice. However, it is our concern with justice which mandates that constitutional rights be safeguarded and that procedures evolve which protect the interests of both society and defendants alike. Consequently, it is our view that the proper approach to the problem presented in the instant appeal is one of balancing these interests as suggested in United States v. Burr (Fed. Cas. No. 14692e [Vol. 25, p. 38; C.C.D. Va., 1807]) where Chief Justice John Marshall wrote (at pp. 39-40) that: “ [w]hen two principles come in conflict with each other, the court must give them both a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principle by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded.’’
Traditionally, the privilege against self incrimination has been deemed to protect against so-called testimonial disclosures (8 Wigmore, Evidence, §§ 2263-2265). As Justice Holmes wrote: “ the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may *439 be material ” (Holt v. United States, 218 U. S. 245, 252). Following this rationale, the Supreme Court wrote in Schmerber v. California (384 U. S. 757, 763-764) that: “It is clear that the protection of the privilege reaches an accused’s communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one’s papers. Boyd v. United States, 116 U. S. 616. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling ‘ communications ’ or ‘ testimony, ’ but that compulsion which makes a suspect or accused the source of ‘ real or physical evidence ’ does not violate it.” (Footnote omitted.)
Thus, if statements made by a defendant during pretrial psychiatric examinations are nothing more than the exhibition of a part of the body, i.e., the mind, the privilege would not obtain (see Danforth, Pretrial Mental Examinations, 19 Rutgers L. Rev. 489, 493). It is our view, however, that these examinations do not readily fit into the Schmerber dichotomy. In formulating an opinion on a defendant’s mental capacity, the physicians must draw from both physical and verbal responses. Inasmuch as these responses are relevant on a material element of the crime, mens rea, we are unable to analogize them to the mere exhibition of one’s body. While strong argument can be advanced that the privilege against self incrimination should not be extended beyond what is generally considered its present scope (see Friendly, The Fifth Amendment Tomorrow: The Case For Constitutional Change, 37 U. of Cincinnati L. Rev. 671), recent decisions of the Supreme Court of the United States have extended the application of the privilege (see, e.g., Marchetti v. United States, 390 U. S. 39; Grosso v. United States, 390 U. S. 62; Garrity v. New Jersey, 385 U. S. 493; Albertson v. SACB, 382 U. S. 70; Murphy v. Waterfront Comm., 378 U. S. 52). Accordingly, it is our view that the privilege does obtain during pretrial psychiatric examinations (see People v. Al-Kanani, 26 N Y 2d 473; People v. Di Piazza, 24 *440 N Y 2d 342 [where we have implied that the privilege functioned during psychiatric interviews]). This is not to say that a defendant who proffers an insanity defense may hide behind that defense because of his privilege and thereby make the People’s burden of proving sanity insurmountable. In People v. Di Piazza (supra, at p. 352) we said that where a defendant defends by reason of insanity and requests a mental examination, ‘ ‘ he may not complain that his privilege against self-incrimination or his right to counsel was violated. (Cf., e.g., Thornton v. Corcoran, 407 F. 2d 695, 700-701.) ” Though it is true that in the instant ease it was the District Attorney who requested the examination, it is our view that it is not who requests the examination which controls, but rather the plea of not guilty by reason of insanity, which is the basis of the psychiatrist’s competency to testify at the trial. Nor does the mere fact that the examination is requested by the District Attorney necessarily mean that the physician will be a witness for the People. In point of fact, the record herein indicates that the court-appointed psychiatrists testified for the defendant. Additionally, in this case, since Lee had previously voluntarily submitted to examination, he should be barred from claiming the privilege at this time.
As the then Judge Conway so accurately observed in People v. Esposito (287 N. Y. 389, 397): “ It must be remembered that the orders for the examination and observation were based upon the defendants ’ claim that they should escape punishment by reason of their mental condition at the time of the commission of the acts charged or by reason of their condition at the time of arraignment and trial. Under those circumstances defendants may not both advance their claims and then seek to make the rules for the determination of those claims. Since they desired to present their claims that they were not legally responsible for their acts because of mental defect they were subject to the use of methods set up objectively by the medical profession for the proper determination of such claims. Courts, under the circumstances presented here, may not control the methods which have been determined by the medical profession to be proper means for discovering or treating mental diseases. ” (Emphasis supplied.)
*441 Accordingly, we hold that the privilege is waived when a defendant interposes his insanity defense. In so doing, we note that several jurisdictions have considered the problem, reaching substantially the same result (see, e.g., In re Spencer, 63 Cal. 2d 400; State v. Whitlow, 45 N. J. 3; State v. Myers, 220 S. C. 309; United States v. Baird, 414 F. 2d 700; United States v. Weiser, 428 F. 2d 932; United States v. Albright, 388 F. 2d 719; contra, Hunt v. State, 248 Ala. 217; Hall v. State, 209 Ark. 180; French v. District Ct., 153 Col. 10; People v. English, 31 Ill. 2d 301; State v. Hathaway, 161 Me. 255; State v. Olson, 274 Minn. 225; State v. Swinburne, 324 S. W. 2d 746 [Mo] ; Shepard v. Bowe, 250 Ore. 288). Lest there be any doubt, we are not saying that because of this waiver, the psychiatrist is a competent witness on all matters concerning the commission of the crime. A defendant’s waiver of privilege because of his plea of insanity only permits the physician to testify as to the facts which formulate the basis of his medical opinion on the question of sanity. To prevent the psychiatrist from giving the basis of his opinion would vastly limit the value of psychiatric examinations (see People v. Di Piazza, supra, at p. 353). We note that the importance of adequate psychiatric opinion has been emphasized in section 60.55 of the new Criminal Procedure Law (eff. Sept. 1,1971) which provides that: “ When in connection with a defense of mental disease or defect, a psychiatrist who has examined the defendant testifies at a trial concerning the defendant’s mental condition at the time of the conduct charged to constitute a crime, he must be permitted to make a statement as to the nature of the examination, the diagnosis of the mental condition of the defendant and his opinion as to the extent, if any, to which the capacity of the defendant to know or appreciate the nature and consequence of such conduct, or its wrongfulness, was impaired as a result of mental disease or defect at that time. The psychiatrist must be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion, and may be cross-examined as to any matter bearing on his competency or credibility or the validity of his diagnosis or opinion.” (See Code Crim. Pro., § 398-b.) This is not to say, however, that any admission as to the crime in question can be considered by the jury in their determination of whether the defendant *442 committed the acts which constitute the crime charged. Nor shall the District Attorney be permitted to use the psychiatric examination as a source of evidence which would be relevant on the issue of guilt.
From the foregoing analysis concluding that the privilege was waived by the plea, Lee had no constitutional right to refuse to participate in the examination ordered below.
We now turn to the' question whether the County Court properly struck the plea. The court’s action was predicated on its view that Lee could not raise an insanity defense and at the same time refuse to submit to an examination. While we agree with that view, we are of the opinion that, inasmuch as a defendant’s capacity to commit a crime is not placed in issue by his availability for examination, but by his plea, striking the plea is not a proper sanction for a refusal to co-operate. Since these examinations are the most effective aid to a determination of the merits of the defense, we hold that where a defendant chooses to deprive the triers of fact of this essential evidentiary source, by refusing to submit to a pretrial mental examination, he cannot at the trial, offer psychiatric evidence on his capacity to commit the crime. If the defendant wishes to call psychiatrists on his behalf, he must first demonstrate to the court in the absence of the jury, that he has, prior to trial, fully co-operated and submitted to a mental examination, where one has been sought by the People. If this obligation is not met by the defendant, the court shall deem the offer of psychiatric testimony inadmissible; and unless the defendant has other proof relevant to his defense, the People’s burden of proof shall be satisfied by the presumption of sanity which remains in the case. Since in such a case, no issue of fact as to insanity would be presented for the jury, the court shall be permitted to charge that as a matter of law the defendant is sane. Where, however, the defendant has other proof of his defense of insanity, and the court finds that the defendant did not co-operate at pretrial psychiatric examinations sought by the People, this other nonpsychiatric proof, if otherwise competent, shall be admissible. In such a case the court shall instruct the jury as to the presumption of sanity and that they must consider whether defendant’s nonpsychiatric proof has rebutted the presumption. Additionally, the court shall be permitted *443 to instruct the jury that the defendant has failed to co-operate (see Burgunder v. State, 55 Ariz. 411) and that the failure to co-operate should be considered by them in determining the merits of the defense (see Note, Pretrial Mental Examination and Commitment, 51 Geo. L. J. 143, 152-153).
Inasmuch as a new trial was originally ordered by the Appellate Division, we perceive no reason why the jury at that trial should not be aided by the benefit of a new examination. It has always been axiomatic that generally, where a new trial has been ordered, the parties are restored to the status obtaining before the initial trial. Thus, it was proper for the Appellate Division to order a new examination. Nor is the fact that the new examination will be conducted some six years after the commission of the crime a reason which should militate against the propriety of ordering the examination. This consideration does not bar the admissibility of psychiatric testimony resulting from the examination and its relevance, if any, is merely a factor which may be considered by the jury in determining the weight to be given to such testimony.
It is argued, however, that the Appellate Division erroneously ordered that the examination be conducted without the presence of nonmedical personnel. With this we agree. Although these pretrial examinations usually occur after arraignment or indictment, our guarantee of counsel at this stage (see, e.g., People v. Waterman, 9 N Y 2d 561; People v. Di Biasi, 7 N Y 2d 544) has not heretofore obtained at examinations ordered pursuant to section 658 of the Code of Criminal Procedure. In People v. McKie (25 N Y 2d 19, 24) we analyzed the postarraignment guarantee of counsel writing that “in order to protect the accused’s Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to counsel had to attach during the pretrial period after the judicial proceeding had commenced either by indictment or arraignment.” However, since we hold herein that the accused’s privilege is waived during pretrial examination, there is nothing to protect and no right to counsel attaches under this rule. Nor is our decision in People v. Al-Kanani (26 N Y 2d 473, supra) apposite. In Al-Kanani, we dealt with a secret psychiatric examination which was conducted after arraignment and we held that our postarraignment rule barred such examinations *444 conducted without the permission of the court and knowledge of defense counsel. (People v. Al-Kanani, supra, at pp. 473-477.) In the instant case, the examinations involved were neither secret nor without the permission of the court and consequently we are not faced with an abuse which our postarraignment rule was designed to correct. Nevertheless, it is our view, that in examinations conducted after the date of this decision, the defendant has a right of counsel.
In United States v. Wade (388 U. S. 218), the Supreme Court held that the Sixth Amendment to the Federal Constitution mandates the presence of counsel at critical stages of the prosecution to preserve the right to a fair trial. A ‘ ‘ critical stage ’ ’ was defined as “ any stage of the prosecution, formal or informal, in court or out, where ” “ the presence of his counsel is necessary to preserve the defendant’s basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself” (Wade, supra, at pp. 226-227). Since pretrial psychiatric examinations are a critical stage in the prosecution of one accused of a crime under the Wade rationale, the defendant is entitled to have counsel present to make more effective his basic right of cross-examination (see Note, Right to Counsel at the Pretrial Mental Examination, 118 U. Pa. L. Rev. 448; State v. Whitlow, 45 N. J. 3, supra, at pp. 26-28). Inasmuch as defense counsel is given the right to be present, it is only fair to allow the District Attorney the same right.
We see no merit to the argument that defense counsel should be permitted to take an active role at the examination, or that he should be allowed to advise his client not to answer questions put to him by an examining psychiatrist or make objections. As in Wade situations, the function of counsel is limited to that of an observer. Both the defense attorney and the prosecutor may take notes and save their comments or objections for the trial and cross-examination of the examining psychiatrist. Additionally, a copy of the medical report must be furnished to both sides, and although no stenographic transcript of the examination is required, if one is made, it shall be made available to both sides prior to trial.
Accordingly, the order appealed from should be modified by allowing the presence of defense counsel and the District Attor *445 ney at the psychiatric examination to be held, but merely as observers.

. Though the two psychiatrists who participated in the examination informed the court that it was their opinion that he was incompetent to stand trial, the court considered other evidence and found him competent.

. The reason for the delay in the Appellate Division does not appear.

. It appears that in the years since the commission of the crime, Lee’s mental condition has improved and that no one suggests that he is now incompetent to stand trial.