OPINION OF THE COURT
Gertrud Mainzer, J.
In these proceedings to terminate parental rights respondent mother has made a motion requesting the presence of her attorney at the court-ordered psychiatric examination to be conducted by the Bureau of Mental Health Services pursuant to section 384-b (subd 6, par [e]) of the Social Services Law. For the reasons set forth below respondent’s motion is granted.
Respondent is the mother of Dailon B., born on December 29,1972, and Tanise B., born on July 31,1980. On June 5, 1981 a finding of abuse was made as to Dailon and Tanise on respondent’s admission under docket numbers N-3612/80 and N-3613/80. On August 14, 1981 a disposi *31 tional order was entered on consent of all parties placing both children with the Commissioner of Social Services for a period of 12 months.[1] On July 21,1982 petitions to extend the placement of the children were filed. During the hearing on the extension of placements it was learned that proceedings to terminate respondent’s parental rights to both children were brought in this court on June 4, 1982. Therefore, an order was entered consolidating the termination proceedings with the proceedings to extend placement subject to the conditions set forth in the original dispositional order (see n 1).
The termination petitions, dated June 2, 1982, allege that respondent mother is unable by reason of mental illness to provide proper and adequate care for her children (Social Services Law, § 384-b, subd 4, par [c]) and, in the alternative, that she has permanently neglected her children (Social Services Law, § 384-b, subd 4). With regard to those portions of the termination proceedings alleging mental illness, respondent moved on October 26, 1982 to disqualify the Bureau of Mental Health Services from conducting the court-ordered psychiatric examination required by section 384-b (subd 6, par [e]) on grounds of alleged bias and incompetence. That motion was briefed and argued by counsel on December 16, 1982. During oral argument the instant motion was made by respondent to permit her attorney to be present at the court-ordered psychiatric examination in the event that the application to disqualify the Bureau of Mental Health Services was denied. On December 21, 1982 respondent’s motion to disqualify the Bureau of Mental Health Services was denied and the attorneys were directed to brief the issues involved in the instant motion. In addition to the legal memoranda submitted by counsel, a memorandum dated January 7, 1983 was received by the court from Dr. Richard Schuster, the director of the Bronx Mental Health Clinic. On February 25,1983 oral argument on the motion was held. At that time the attorneys for all parties waived *32 an opportunity provided by the court to present additional psychiatric evidence on the issues raised herein and decision on the motion was reserved.
Essentially, respondent contends that in a proceeding to terminate parental rights on the ground of mental illness, she has a right to have her attorney present at the court-ordered psychiatric examination based on New York constitutional and statutory principles of effective assistance of counsel. In support of her motion, respondent relies, inter alia, on Matter of Lee v County Ct. of Erie County (27 NY2d 432), and People v Cerami (33 NY2d 243), wherein the Court of Appeals found that the right to counsel in criminal prosecutions includes the presence of counsel at pretrial psychiatric examinations of a defendant conducted pursuant to court order. By analogy respondent argues that in a termination proceeding based on a charge of mental illness the right to counsel also encompasses the right to have counsel present at the court-ordered psychiatric examination so that counsel can effectively cross-examine the psychiatrist at trial.
In opposition, the petitioner and Law Guardian have argued that a termination proceeding cannot be equated with a criminal proceeding in either substance or form. In addition, they contend that the right to counsel afforded a parent in a termination proceeding does not extend to counsel’s presence at the psychiatric examination since the presence of a third person at the examination is likely to compromise the independence and accuracy of the evaluation. In support of their contention counsel have relied on the statement submitted by Dr. Schuster. In pertinent part, that statement sets forth the clinic’s belief that an attorney’s presence at the psychiatric examination “could disrupt or distort the subtle but important behaviors observed during a doctor-patient interaction”, and that with such a “contaminating element” it would become “more difficult to assess the patient’s behavior accurately”.
Since no statute or decision has addressed the issues presented here the court has examined the matter as one of *33 first impression.[2] In doing so, the court has looked to the interests at stake in a termination proceeding rather than the dichotomy between civil and criminal proceedings.[3] In this regard it is well recognized that a proceeding to terminate parental rights is among the most severe forms of State intervention both in terms of the nature of the protected interests threatened and the permanency of the loss which may occur. In Santosky u Kramer (455 US 745, 758-759), the Supreme Court, citing its decision in Lassiter v Department of Social Servs. (452 US 18, 27), reiterated: “a natural parent’s ‘desire for and right to “the companionship, care, custody, and management of his or her children” ’ is an interest far more precious than any property right. 452 U. S., at 27, quoting Stanley v. Illinois, 405 U. S., at 651. When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it. ‘If the State prevails, it will have worked a unique kind of deprivation * * * A parent’s interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one.’” In Santosky v Kramer (supra, p 759), *34 the Supreme Court went on to say: “juvenile delinquency adjudications, civil commitment, deportation, and denaturalization, at least to a degree, are all reversible official actions. Once affirmed on appeal, a New York decision terminating parental rights is final and irrevocable * * * Few forms of state action are both so severe and so irreversible.”
In light of the nature of a termination proceeding, at least 33 States, including New York, have guaranteed parents the right to counsel in proceedings to terminate their parental rights.[4] In New York in Matter of Ella B. (30 NY2d 352) the Court of Appeals found that the right to counsel was constitutionally mandated for indigent parents in all actions to terminate their parental status. That constitutional right was later codified in section 262 of the Family Court Act which provides that indigent parents are entitled to the assistance of counsel upon their first appearance in a proceeding to terminate parental rights.
In determining the scope of the right to counsel in New York the courts have applied the test enunciated in United States v Wade (388 US 218). Under the Wade test the right to counsel is not merely satisfied by counsel’s presence at trial, but counsel is required at all critical stages of a prosecution, formal or informal, where it is necessary to preserve the defendant’s right to a fair trial, including the right to meaningful cross-examination. Thus, where the right to counsel exists it necessarily extends to any stage of a proceeding where there is the potential for substantial prejudice and where the presence of counsel will avoid the risk of such prejudice. (United, States v Wade, supra, at p 227.)
In the instant proceeding it is alleged that respondent is suffering from a mental illness sufficiently serious to permit the State to permanently terminate her parental rights. In such a proceeding the sole issue is whether the respondent is afflicted with a mental disease or condition as defined in section 384-b (subd 6, par [a]), to such an extent that she is unable now and in the foreseeable future to provide proper and adequate care for her children. In *35 contrast to termination proceedings alleging permanent neglect or abandonment, the respondent in a proceeding based on mental illness is required by statute to undergo a court-ordered psychiatric examination as part of the fact-finding process to evaluate her mental condition. (Social Services Law, § 384-b, subd 6, par [e].)[5] Thereafter, the court-appointed psychiatrist is required to testify regarding his assessment of the respondent. (Social Services Law, § 384-b, subd 6, par [e].)
Undoubtedly, in a termination proceeding based on mental illness, the testimony of the court-appointed psychiatrist is crucial. Although the petitioner and the respondent have the right to submit other psychiatric, psychological or medical evidence bearing on respondent’s mental condition (Social Services Law, § 384-b, subd 6, par [e]), the testimony of the examining psychiatrist is, in practice, frequently controlling since it is often the only probative evidence available to the petitioner to support the case. Consequently, the court-ordered psychiatric examination is a critical, if not the most critical, stage of a proceeding to terminate parental rights based on mental illness. The right to counsel in such a proceeding must therefore include the right to have counsel present at the examination for, otherwise, the risk of prejudice to the respondent is not insubstantial.
It is widely recognized that psychiatric diagnosis and judgments are often subjective and unreliable. Therefore, effective cross-examination of the psychiatrist is essential to assess the validity of the psychiatric testimony and to avoid the risk of prejudice as much as possible.[6] Counsel must be able to hear the questions put to respondent and her answers as well as to observe the interaction and behavior of the respondent and the psychiatrist. How else *36 can counsel determine if the psychiatrist’s descriptions of respondent’s statements and behavior are accurate and complete and if the examination was conducted in a fair and professional manner? Counsel’s presence at the examination is also necessary to discern any particular bias or predilection a psychiatrist may have and to question the competence and expertise of the psychiatrist at trial. Clearly, if counsel was-unable to make such observations at the time of the psychiatric examination, he would be unable to test adequately the validity of the psychiatric evidence at trial. In order to ensure that the expert’s opinion is “narrowly controlled by the underlying facts”[7] and all relevant facts have been given due consideration, this court concludes, as did the court in Matter of Lee u County Ct. of Erie County (supra, at p 444), that in a proceeding of this kind counsel’s presence at the examination is necessary to preserve the respondent’s basic right to a fair trial.[8]
Despite the need for counsel indicated above, petitioner, relying on Dr. Schuster’s statement, has argued that the presence of a third person at the psychiatric examination, such as respondent’s attorney, is likely to impair the psychiatric process and taint the accuracy of the evaluation.[9] While the presence of counsel might present an added difficulty for the psychiatrist, as noted by Dr. Schuster, the' court finds that the risk of inaccuracy in such a case is de minimis. In a proceeding to terminate parental rights on the ground of mental illness a finding can only be made where the mental illness of the parent is so extreme that it is considered virtually incurable and incapacitating. Certainly, this would involve a serious mental illness which would be recognizable through fairly obvious symptoms and behaviors. While neurotic feelings and emotions and various subtle psychiatric problems might be influenced by the presence of third persons at the examination, it is unlikely that symptoms of a major psychiatric illness *37 would be masked or in any significant way affected by the presence of other persons at the examination. Finally, whatever the difficulty the psychiatrist may encounter as a result of the presence of third persons, it can be avoided by counsel’s use of an audio-visual observation room. In that room counsel will be able both to see and hear the examination as it takes places without disturbing the clinical setting between the psychiatrist and the respondent.
Based on the foregoing, the court finds that in order to be meaningful the right to counsel afforded a parent in a termination proceeding based on mental illness must include the right to have counsel present as an observer at the court-ordered psychiatric examination. In the interest of fairness, since respondent’s counsel has a right to be present, the same right is given to counsel for the petitioner and the Law Guardian.
This matter is adjourned to April 25, 1983, when a date for the court-ordered psychiatric examination will be fixed and procedures established for counsels’ attendance at the examination. At that time the court shall also determine the manner in which the examination will be recorded.

. The dispositional order contained certain conditions regarding the duties of the commissioner and the agency as well as the mother’s rights of visitation in order to work toward reuniting the family.

. The decision of the Appellate Division in Matter of Alexander L. (92 AD2d 755), which affirmed without opinion a Family Court order terminating parental rights after a finding of mental illness, is not dispositive here. In that case the respondent parent refused to be examined by the court-appointed psychiatrist in the absence of counsel, without having made an application for counsel to attend the examination. Therefore, the court’s finding ofmental illness was based on the testimony of a psychiatrist who examined respondent’s prior psychiatric and medical records pursuant to section 384-b (subd 6, par [e]) of the Social Services Law. Similarly not applicable here is Matter of Patricia P. (117 Mise 2d 826), in which the court denied a motion for counsel to be present at a mental health examination in a neglect proceeding for extension of placement where the respondent opposed the extension. In that case the issue was whether the children should return to their father or remain in placement for another year with continuing parental contact. The issue here is the complete termination of respondent’s parental rights and permanent disruption of the family unit. In addition, the psychiatric examination directed in the instant case is an essential part of the fact-finding process while the mental health evaluation in Patricia P. was ordered after a previously made neglect finding.

. In determining the kind of substantive and procedural protections required in a particular type of proceeding, the courts have consistently disregarded labels such as civil, criminal, and quasi-criminal and have instead focused on the nature and weight of the private and public interests at stake. (Matter of Gault, 387 US 1, 49-50 [juvenile delinquency]; Addington v Texas, 441 US 418, 425-426 [civil commitment); Santosky v Kramer, 445 US 745 [termination of parental rights); Vitek v Jones, 445 US 480, 492 [prisoner transfer to mental hospital]; Chaunt v United States, 364 US 350, 353 I denaturalization 1; Matter of Winship, 397 US 358, 365-366 [juvenile delinquency].)

. See Lassiter v Department of Social Servs., 452 US 18. 33-34.

. In termination proceedings based on permanent neglect and abandonment no psychiatric examinations are required for the fact-finding hearing but mental health evaluations may be directed after a finding has been made for use at the dispositional hearing.

. Addington v Texas, 441 US 418, 429, supra; O’Connor v Donaldson, 422 US 563, 584 [Chief Justice Burger’s concurring opnl; Matter of Bennett v Jeffreys, 40 NY2d 543, 549; United. States vBohle, 445 F2d 54; Ennis & Litwack, Psychiatry and Presumption of Expertise: Flipping Coins in the Courtroom, 62 Cal L Rev 693; Diamond, Fallacy of Impartial Expert, 3 Archives Grim Psychodynamics 221.

. Matter of Bennett v Jeffreys, supra, at p 549; see Ennis & Litwack, 62 Cal L Rev, p 746.

. The holding in Matter of Lee v County Ct. of Erie County (27 NY2d 432) has been codified in 1980 (CPL 250.10).

. The court notes that in termination proceedings where the respondent parents speak little, if any, English, the psychiatric examination is conducted with the assistance of an interpreter. .