OPINION OF THE COURT
Leon Deutsch, J.
The issue presented, which appears to be one of first impression, is whether a respondent’s attorney, in a juvenile delinquency proceeding, after a fact-finding, and prior to the dispositional hearing, must be present and permitted to participate in the diagnostic mental health study of the respondent.
Respondent herein moves this court for such an order, contending that he has a right to such direction pursuant to the Fifth and Sixth Amendments of the United States Constitution, and under the applicable provisions of the Family Court Act.
Following a fact-finding hearing, the court entered a finding against the respondent that he committed acts, in concert with others, which, were he an adult, would constitute the crimes of rape in the first degree, a violation of subdivision 1 of section 130.35 of the Penal Law, and sexual abuse in the first degree, a violation of subdivision 1 of section 130.65 of the Penal Law. The rape finding constitutes a designated felony under the statute. (Family Ct Act, § 301.2, subd 8.)
Subsequent to the fact-finding, the court, as required by subdivision 1 of section 351.1 of the Family Court Act in *386 the case of a designated felony, ordered a diagnostic mental health study of the respondent to be used at the dispositional hearing.
It should be noted, at the outset, although article 3 of the Family Court Act is specific and comprehensive in spelling out rights and procedures, including the active participation by counsel at the dispositional hearing itself, it does not provide for the presence or participation of counsel at the mental health interviews and examinations.
Nevertheless, respondent argues that the mental health study is an integral part of a delinquency dispositional proceeding, impacting significantly upon it, and, therefore, the diagnostic study itself is a critical stage of the dispositional proceeding requiring effective assistance of counsel.
It is, of course, true that the dispositional stage of the delinquency proceeding is “unique to the Family Court” and has “no derivation.” (Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 350.4.) Although it has been held that “[t]he dispositional stage is the Family Court analogue of sentencing in an adult criminal case” (Matter of Nathan N., 56 AD2d 554), there are differences in the two proceedings. The principal factor which distinguishes the delinquency disposition from the criminal sentence is that if the court does not find at the dispositional phase (a separate dispositional hearing) that the respondent is in need of supervision, treatment, or confinement, the court must dismiss the petition. (Family Ct Act, § 351.1, subds [1], [2].) Thus, an element of the delinquency itself, that is, the need for supervision, treatment or confinement, must be established at the dis-positional phase, despite the fact that the respondent has earlier been incriminated at a fact-finding trial.
Interestingly, it is this very difference upon which respondent seizes in order to advance his argument, which, in part, vindicates his Sixth Amendment and statutory rights.
Despite the difference, we may look to the criminal sentencing process (“the analogue”) for standards, as it is in the basic similarity of the two types of proceedings (that is, the potential loss of freedom) which allows for the comparison, and spells out the applicable constitutional *387 rights. While, thus, directing our attention for comparison, we must also consider the nature of the diagnostic material, and its manner and purpose of usage.
The Court of Appeals in People v Perry (36 NY2d 114), dealing with nondisclosure of presentence investigative reports, reiterated an earlier holding that “presentence reports are not compiled in an adversarial context. Their main function is to provide the court with the best available information upon which to render an individualized sentence.” {Perry, supra, at p 120; emphasis added.)
After noting “[t]hat the sentencing process is a crucial stage of the criminal process which rises to constitutional dimension”, the court, nevertheless, declared that in the sentencing process the “full panoply of constitutional rights” do not apply. {Perry, supra, at p 119.)
Perry held that the rights of the defendant are protected if the defendant is afforded “an opportunity to refute those aggravating factors which may have negatively influenced the court” {Perry, supra, at p 119), and, again, “as long as the defendant is afforded an opportunity to present whatever he feels is relevant and the court has the ability to reconcile any disparities, the above-mentioned [presentencing] procedures are constitutionally valid.” {Perry, supra, at p 120.)
CPL 390.50 (subd 2) dealing with criminal sentencing mandates disclosure of presentence reports but allows the court discretionary power to limit what is disclosed. CPL 400.10 provides for criminal presentence conferences; but, these are discretionary, and may be formal or informal, on or off the record.
The contrast with the delinquency dispositional phase is significant. Section 350.4 of the Family Court Act spells out a formal order of procedure at a separate and distinct dispositional hearing. Witnesses may be called by the parties and the court to give testimony, including the preparers of the diagnostic report;[1] all witnesses are subject to cross-examination; the respondent may offer up *388 dispositional alternatives; rebuttal or surrebuttal may be permitted; closing statements may be delivered. Further, the contents of the diagnostic reports ordered by the court must be fully made available to respondent in advance of the dispositional hearing. (Family Ct Act, § 351.1, subd 4.)
Clearly, the statutory safeguards which cloak the juvenile at the dispositional phase are far more extensive and comprehensive than that which are available to the defendant in the sentencing process.
At the criminal sentence level, Perry (supra, at p 120) holds that there is no constitutional right to disclosure of the “nonadversarial” presentence probation report. A fortiori, there is no right to defendant to have his counsel present or participate in the preparation of such a report. The same principle must certainly obtain for a presentence diagnostic assessment. A psychological assessment in aid of the court’s determination of sentence is no less “nonadversarial” than probation or other presentence investigative materials.
There can be no doubt that the Perry principle applies to the dispositional phase of a delinquency proceeding. Not only are these predispositional investigative materials (the mental health study) nonadversarial, but, such reports must be viewed in the context of their purpose and the manner of usage.
Criminal sentencing is in substantial part, at least, retributive in nature. By contrast the delinquency dispositional phase is essentially rehabilitative in purpose even though the court is mandated to consider both “the needs and best interests of the respondent as well as the need for protection of the community.” (Family Ct Act, § 352.2, subd 2.) This remains true even with respect to a designated felony matter, as herein, pursuant to section 353.5 of the Family Court Act. Nor does this historically rehabilitative purpose change or diminish because the fact-finding, as herein, constitutes a designated felony act. (Family Ct Act, § 301.2, subd 8; § 353.5; People v Young, 99 Misc 2d 328; see, also, Sobie, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 301.1.) Thus, “nonadversarial” predisposition investigative materials are here utilized in a dispositional proceeding which is *389 essentially rehabilitative in purpose, and under mandated procedures which provide broad guarantees to respondent throughout, of the effective assistance of counsel.
In the circumstances, this court holds that there is neither need nor basis to expand respondent’s right beyond what is available pursuant to article 3 of the Family Court Act; nor is his Sixth Amendment right violated by virtue of his counsel not being present and not participating during the diagnostic interviews.
Respondent, in his Sixth Amendment contention, goes well beyond his claim as that relates specifically to a delinquency proceeding at the dispositional phase. He argues broadly that counsel’s presence and participation at a psychological evaluation, per se, is protected by the Federal and State Constitutions providing for the effective assistance of counsel, because, he contends, such evaluation is a critical stage of the proceeding. The respondent argues, in particular, that this court should apply the rationale of two Court of Appeals decisions which held that counsel must be present at psychological examinations.
Respondent relies on Matter of Lee v County Ct. (27 NY2d 432), which held that a defendant had the right to have his attorney present at a pretrial sanity examination. Lee declared that (p 444) “pretrial psychiatric examinations are a critical stage in the prosecution of one accused of a crime”. It ruled, therefore, in accord with United States v Wade (388 US 218), that the defendant was entitled to have his attorney present at the examination, but only as an observer.
In the second case, which respondent urges (Matter of Alexander L., 60 NY2d 329,332), the Court of Appeals held that a “parent who is to be examined by a court-appointed psychiatrist in a proceeding to terminate the parental relationship * * * is entitled to have his or her attorney present during the examination if the parent so desires”. Basing its holding on statutory grounds, the court held that section 262 (subd [a], par [iv]) of the Family Court Act gave the respondent parent, in a proceeding to terminate parental rights on the grounds of mental illness, the right to have counsel present during the entire proceeding. In so doing, the court took explicit note of the “pre-eminent *390 importance of the psychiatrist’s evaluation” in this type of proceeding. {Alexander L., supra, at p 336; emphasis added.)
Respondent’s reliance on these two cases, is, in the opinion of this court, misplaced. The issue in Lee was a pretrial sanity determination; and in Alexander L., a pretrial mandated psychiatric examination. Neither case speaks to the issue of a post-fact-finding mental health study. Moreover, in both those cases, the results of the psychiatric examination would be the “pre-eminent,” indeed, probably the exclusive evidence presented at the trial of the issue.[2] By reason of that fact, the court in Lee determined that the examination was a “critical stage” of the proceeding {Lee, supra, at p 444), and the court in Alexander L. determined that the examination was a “critical phase” of the litigation. {Alexander L., supra, at p 336.) The Court of Appeals held that at such critical phases or stages the party had the right to counsel.
By contrast, in the case at bar, the court’s use of the psychological reports, while important, is more limited, generally, not “pre-eminent,” and certainly not exclusive. At the dispositional phase, the court is required to consider, in addition to the psychological reports, the probation reports, which include, but are not limited to, school adjustment reports and records, history of prior conduct, the family situation, reports from other agencies and persons, and all other evidence and testimony of witnesses presented at the dispositional hearing.
Thus, there is no basis for extending the “critical” stage or phase rationale of Lee and Alexander L. to the psychological at the delinquency dispositional phase herein.
Finally, the respondent advances a broad claim that he has an absolute right to invoke his Fifth Amendment privilege against self incrimination as to the entire mental health interview process. He, himself, cites no authority *391 for such proposition. In fairness to respondent, however, we should take note of the only case in which a court held that a defendant’s statements to a psychiatrist admitted in evidence at the penalty phase of a trial were in violation of his Fifth Amendment rights.
In Estelle v Smith (451 US 454), a capital sentence case, the issue was thfe defendant’s future dangerousness, at the penalty phase of the proceeding, in order to determine whether the death sentence would be imposed. In that case, the prosecution had used the results of a pretrial competency psychiatric examination at the postconviction penalty hearing where the sentence to be imposed could be (and was) death. The United States Supreme Court held that, as the defendant had not been warned at the competency hearing that he had a right to remain silent and that his statements could be later used against him at a capital sentencing proceeding, admission at the penalty phase of this capital felony trial of the psychiatrist’s damaging testimony on the critical issue of future dangerousness violated his Fifth Amendment right against self incrimination. (The court further held that his Sixth Amendment right was also violated as his counsel was not notified in advance that the pretrial psychiatric examination would later encompass the issue of future dangerousness.)
Estelle is inapposite to the case at bar. Here, we are not involved with a pretrial psychiatric examination; respondent and counsel both know and are apprised in advance of the limits and purposes of the examination; there is no question of actual or implicit bad faith; this is not a capital sentence case (a fact plainly significant to the Supreme Court in its decision).
Estelle has been limited to its unique facts and has been distinguished in subsequent noncapital cases. (Baumann v United States, 692 F2d 565; see, also, Matter of Freddie L., 120 Misc 2d 36.) Indeed, the Estelle court itself, after ruling that the defendant’s Fifth Amendment rights were violated, stated in a footnote that: “Of course, we do not hold that the same Fifth Amendment concerns are necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination.” (Estelle v Smith, 451 US, at p 469, n 13.)
*392 Accordingly, this court holds that the respondent does not have a Fifth or Sixth Amendment right, nor a statutory right, to have his counsel present or participate at the diagnostic mental health study of respondent, ordered by the court pursuant to the Family Court Act preparatory for a dispositional hearing.
Motion denied.

. The court earlier granted a separate motion by respondent to obtain an examination by a psychiatrist or psychologist of his own choosing, at public expense, if, after reading the court clinic’s diagnostic reports, he concludes that he requires his own expert in order to present such evidence in his behalf at the dispositional hearing.

. In Matter ofTanise B. (119 Misc 2d 30), a proceeding to terminate parental rights on the grounds of mental illness, as Matter of Alexander L. (60 NY2d 329, 332), the court cogently observed that “the testimony of the examining psychiatrist, is, in practice, frequently controlling since it is often the only probative evidence available to the petitioner to support the case.” (Tanise B., supra, at p 35.) For that reason, that court held the psychiatric examination to be a “critical, if not the most critical, stage” of the proceeding.