OPINION OF THE COURT
George L. Jurow, J.
In the Matter of Alexander L. (60 NY2d 329), the New York Court of Appeals held in a proceeding to terminate parental rights on the basis of the mental illness of the parent, that the respondent parent is entitled to have his or her attorney present during the mandated psychiatric examination. This case raises a number of significant issues concerning the conditions — other than respondent’s right to counsel at the examination — that should attend such psychiatric examinations, which conditions were not addressed in Alexander L.
Petitioner filed this proceeding pursuant to section 384-b (subd 4, par [c]) of the Social Services Law to terminate respondent mother’s parental rights, on the ground that respondent is presently and for the foreseeable future unable, by reason of mental illness, to provide proper and adequate care for her child. In accordance with the mandate of section 384-b (subd 6, par [e]) of the Social Services Law, the court ordered that respondent be examined by a staff psychiatrist of the Family Court Mental Health Services (also known as BMHS).
The issues in this case were framed through a series of motions by respondent asking that the court order the following: (1) that respondent’s attorney have not only the right to be present at the psychiatric examination, but that this right be exclusive to the presence of counsel for the other parties to the proceeding; (2) that the psychiatric examination be recorded, either by tape or by a stenographer, so that a transcript of the examination be available at trial; (3) that counsel’s presence at the examination not be limited to that of observer only, but that *561 counsel be permitted to object or stop the examination if counsel believes that questioning may relate to the attorney-client privilege or to possible incrimination.
Counsel for the Commissioner of Social Services asserts his right to be present at the examination, and also, opposes respondent’s application that the examination be recorded. The child’s Law Guardian asserts her right to be present at the examination, and also takes the position that counsel’s participation at the examination may be limited to observer status.
A series of hearings were held on the issues presented in the motions. The BMHS (court clinic) was permitted to present its views at the hearings, since the clinic conducts virtually all section 384-b (subd 6, par [e]) of the Social Services Law examinations in New York City, and would clearly be affected by the outcome of the case. The witnesses who testified at the hearings included Dr. Peter Guggenheim, Medical Director, BMHS; Dr. Richard Garmise, Clinical Director, BMHS; and Dr. Alan Levy, Director of the Forensic Child Psychiatry Clinic at Columbia Presbyterian Hospital.
I. PRESENCE OF ATTORNEY AT EXAMINATION
Respondent’s attorney claims that she has the exclusive right to be present at the psychiatric examination, contending that the Court of Appeals in Alexander L. (60 NY2d 329, supra) granted this right only to respondent. Counsel for the other parties to the proceeding oppose respondent’s assertion of exclusive presence, and contend that they also have a right to be present during the examination.[2]
*562 Respondent’s claim for exclusive presence has no merit. Although it is true that Alexander L. (supra) found respondent’s attorney had a right, based on section 262 of the Family Court Act, to be present at the examination, this finding in no way precludes the conclusion that counsel for the other parties to this type of proceeding also possess comparable rights. Alexander L. simply did not address the possible rights counsel to parties other than the respondent may possess, and it cannot be inferred that they therefore do not or may not possess similar rights.
Factors grounded both in statute and policy compel the conclusion that if the respondent’s attorney has a right to be present, then other counsel in the proceeding have a comparable right. The Law Guardian’s right appears to be equally grounded in statute, namely, section 249 of the Family Court Act which requires the court to appoint a Law Guardian to represent a minor who is the subject of a section 384-b of the Social Services Law proceeding. (See, also, Family Ct Act, § 241.) Section 249 of the Family Court Act is a codification of the rule established in Matter of Orlando F. (40 NY2d 103, 112). As stated in Matter of Tyease “J”. (83 Misc 2d 1044, 1047), “Without such representation [by the Law Guardian], the natural parent vigorously focuses on parental rights and claims. The approach centers on whether ‘this child belongs to me’, without an equal inquiry, on behalf of the unrepresented infant on whether ‘this parent belongs to me’.” As counsel for respondent herself candidly acknowledged at the hearing, termination proceedings may have “the most awesome consequences” for the subject infant. Therefore, there is no basis in logic, or in law, as to why the rights of the mother in a section 384-b of the Social Services Law proceeding ought to take precedence over the equally significant interests of the infant.
Petitioner (Commissioner of Social Services, or its authorized agencies) have no less an interest in also having counsel present at the examination. Petitioner’s basic interest is in implementing the legislative mandate expressed in section 384-b (subd 1, par [b]) of the Social Services Law to “provide procedures not only assuring that the rights of the natural parent are protected, but also, where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child by terminating parental rights and freeing the child for adoption.” In this regard, the petitioner, representing the public interest, has a clear interest in the accuracy of a court-ordered psychiatric examination assessing the respondent parent’s mental capacities and in the fairness of the subsequent hearing as to whether the parent’s degree of mental impairment *563 requires termination of his or her parental rights. Since Alexander L. (60 NY2d 329, supra) took account, not only of the “preeminent importance of the psychiatrist’s evaluation”, but also “the concomitant advantages for trial purposes that would be expected to attend the attorney’s presence during this critical phase of the litigation” {supra, p 336), this benefit can and should be available to petitioner’s counsel whose interest in obtaining a fair and proper determination of the subject parent’s capacities is equally paramount.
Finally, simple fairness and equity would dictate that if both respondents’ counsel and the child’s Law Guardian have a right to be present during the examination, all counsel, including counsel for petitioner, should be present as well. In this connection note should be taken of Lee v County Ct. of Erie County (27 NY2d 432), permitting both prosecution and defense counsel to be present at a pretrial psychiatric examination. (See, also, Matter of Tanise B., 119 Misc 2d 30, affd 98 AD2d 689, a similar termination proceeding in which the court’s order provided that counsel for all parties could observe the examination.)
II. ROLE OF COUNSEL AT EXAMINATION
Counsel for respondent maintained at the hearing, and more elaborately in their written summation, that the role of counsel at the examination is not limited to that of an “observer” only, but rather that counsel had a right to stop the examination if, for example, a question by the examiner infringed upon the attorney-client privilege, or would subject the respondent to some type of incrimination. In fact, respondent appears to be asking the court to set a precondition, or to equivalently issue a prior protective order, restricting BMHS examiners from inquiring to the aforesaid areas. Thus, at issue is the scope of counsel participation during psychiatric examinations in termination proceedings.
In its argument respondent’s counsel appears to lose sight of the specific purpose for which counsel’s presence is permitted at this type of psychiatric examination. The right to presence or assistance of counsel is not a unitary construct, but rather must be viewed, and if necessary properly conditioned, in light of the function of the proceeding for which counsel is assigned. In a termination proceeding, it is the validity and fairness of the psychiatric examination that is most significant. The examination itself is not an adversarial proceeding, but rather constitutes an attempt to provide the court with an unbiased assessment of the mental status and capacities of the respondent. An accurate and valid psychiatric examination depends, in part, on *564 maximizing the free flow of the examinee’s responses to the examiner, rather than creating a structured setting more conducive to eliciting the (perhaps more guarded) responses of the examinee guided by his attorney’s active participation. As Alexander L. (supra) implies, the purpose of allowing counsel to be present is to provide counsel with the “concomitant advantages for trial purposes that would be expected to attend the attorney’s presence during this critical phase of the litigation” (60 NY2d, at p 336). Principal among such “concomitant advantages” would be to maximize the effectiveness at trial of examination or cross-examination of the clinician who performed the evaluation, and perhaps the respondent as well; this examination of witnesses at trial is clearly enhanced by counsel having observed how the psychiatric evaluation was conducted. Thus, the role of counsel at such a psychiatric examination can be adequately fulfilled by limiting counsel’s role to that of an observer only. In this way the interests of the examining clinician, and of the court, in an accurate examination would be properly served by minimizing unnecessary intrusions during the psychiatric examination, while also protecting respondent’s right to effective counsel at trial.
Rather than allowing respondent’s counsel to participate in or to interrupt the psychiatric examination, and therefore possibly affect the validity of the examination, the concerns of respondent’s counsel can be met by permitting respondent to move at trial to strike any questions or answers at the psychiatric examination deemed objectionable. (Cf. Murray v Specialty Chems. Co., 100 Misc 2d 658, 661.) The view of this court was most clearly expressed by the Court of Appeals in Lee v County Ct. of Erie County (27 NY2d 432, 444, supra) permitting the presence of counsel at pretrial psychiatric examinations in criminal cases, but as observers only: “We see no merit to the argument that defense counsel should be permitted to take an active role at the examination, or that he should be allowed to advise his client not to answer questions put to him by an examining psychiatrist or make objections. As in Wade situations, the function of counsel is limited to that of an observer.” This principle enunciated in Lee is effectively codified in CPL 250.10 (subd 3) providing for the presence of counsel at pretrial psychiatric or psychological examinations but limiting such role: “Defendant has a right to have his counsel present at such examination. The district attorney may also be present. The role of each counsel at such examination is that of observer, and neither counsel shall be permitted to take an active role at the *565 examination.” (See, also, Matter of Tanise B., 119 Misc 2d 30, supra, and People v Whitfield, 97 Misc 2d 236, both limiting the role of counsel at psychiatric examinations to observer status.)
The principle of limiting the role of counsel at the examination to observer status, in order to minimize intrusion at the examination, would also tie enhanced by a requirement — advocated by the BMHS and agreed to by all parties in this case — that counsel remain out of the line of sight of the examiner and examinee during the conduct of the clinical examination.
III. RECORDATION
The most difficult issue this court must resolve concerns respondent’s motion that the psychiatric examination be recorded — either by tape or by a stenographer — so that a transcript of the examination is available at trial.
Respondent argues that the availability of a transcript facilitates preparation for examination of witnesses at trial, and helps resolve disputes as to what transpired during the clinical examination. Both petitioner and the BMHS oppose recordation on the ground that recordation is an added intrusion that may adversely affect the accuracy and validity of the psychiatric examination.
Respondent’s expert witness, Dr. Levy, testified that recordation of psychiatric examinations is increasingly utilized in the field of psychiatry as a training device; that it may assist the profession in conducting more standardized and valid clinical examinations; and that, although there is some additional intrusion, such intrusion is relatively minimal and usually would not affect the validity of the examination, the results of which the examinee usually knows are subject to disclosure.
Dr. Guggenheim, Director of the BMHS, differed sharply with the views of Dr. Levy, contending that recordation, regardless of method utilized (tape or stenographic record; and regardless of whether recordation is effected by use of an observation room behind a one-way mirror) is an additional distraction during the examination for the examinee who knows he is being observed. According to Dr. Guggenheim, the validity of these types of section 384-b (subd 6, par [e]) of the Social Services Law diagnostic clinical evaluations is dependent upon the examinee’s close, intense, and free interchange of thoughts and feelings with the examiner, an intimate process that would be hampered by the presence of any additional distractions, including mechanical devices, stenographers, or the mere knowledge by the examinee that he or she is being observed or monitored. Dr. Guggenheim *566 conceded that permitting the presence of observer attorneys would constitute the primary intrusion, and that recordation would be a secondary incremental difficulty, although one that should nonetheless be avoided.
There is relatively little case law on the recordation issue at the non-Federal level. A few courts that have attempted to address the problem have acknowledged the need to strike a balance between the need for a record and the need to minimize intrusion during the examination. In the most comparable case to the instant proceeding, Matter of Tanise B. (119 Misc 2d 30, supra), the Family Court ordered the psychiatric examination to be observed by the attorneys in an audiovisual observation room connected to the examination room, and also ordered the examination to be recorded by tape or by a court reporter in the observation room. People v Whitfield (97 Misc 2d 236, supra) adopted the same approach, although in a criminal rather than termination case. Both Milam v Mitchell (51 Misc 2d 948) and Specialty Chems. Co. (100 Misc 2d 658, supra) permitted stenographic recording, although in a civil context, and apparently under circumstances in which the attorneys were not themselves present. However, in Lee (27 NY2d 432, 444, supra) the Cdirt of Appeals, after holding that attorneys were entitled to be present at pretrial psychiatric examinations in criminal cases, declined to require a transcript (“although no stenographic transcript of the examination is required, if one is made, it shall be made available to both sides prior to trial”).
In assessing the arguments for and against requiring a transcript of psychiatric examinations in termination proceedings, this court holds that the better view is to decline to require production of a transcript. Respondent’s motion to compel recordation of the examination and subsequent preparation of a transcript is therefore denied. The basis for the court’s judgment is as follows:
First, this court believes that the presence of counsel during the psychiatric examination (who are free to take notes during the proceeding) provides sufficient aid to counsel in preparing for trial and in exercising their right of examination and cross-examination at trial. Although a transcript might be a further aid to such examination at trial, the capacity for sufficient examination of witnesses at trial is satisfied by counsel’s presence itself at the psychiatric examination. In this connection, it should be noted that a transcript of a psychiatric diagnostic evaluation, although perhaps providing a more complete record of what transpired at the examination, cannot itself *567 provide a totally complete record. The subject matter of a psychiatric diagnostic evaluation does not consist merely of oral questions and answers (the matter most clearly reflected in a transcript) but also consists of the manner in which the examinee relates to the examiner; the affect (emotional feeling and ideation) communicated or withheld; speech patterns; communications emphasized, omitted, or selectively presented, and the like. In other words, although it may be helpful to have a record of the raw questions and responses at the examination, an equally if not more significant feature of the examination consists of the trained clinician’s interpretation of the entire interactive process during the examination, which is the real focus of counsel’s review of clinical expert witnesses at trial. Even if a videotape of the examination were presented in court, providing close to the maximum record of what occurred at the psychiatric examination, it would still leave for review at trial the more important feature of the psychiatric examination, namely, the examining clinician’s interpretation of the meaning of this raw material.
Second, it is noteworthy that none of the expert witnesses who testified, on either side of the recordation question, could testify with any certainty as to the effects of recordation. All agreed that there is little clinical experience and absolutely no direct research evidence concerning the effects of recordation on psychiatric examinations in termination proceedings (or, for that matter, in any type of judicial proceeding), and that any such effects, at this point in time, must be considered indeterminate. This indeterminacy is important because it suggests that courts ought to act with restraint, if possible, in fashioning orders that may prove to have more of the appearance rather than the reality of balancing the inherent conflict between recordation and intrusiveness. It may be tempting to resort to available technology to minimize this conflict, as did the courts in Tanise B. (119 Misc 2d 30, supra), and Whitfield, (97 Misc 2d 236, supra), in ordering observation and recordation behind a one-way mirror. But even this approach results in some level of indeterminate intrusion on the examination. (Interestingly, Dr. Guggenheim, with considerable experience in overseeing large numbers of clinical evaluations in termination proceedings, testified that he believed the “one-way mirror” approach to be potentially more intrusive than having all observers present, but out of the line of sight, in the examination room.) It may well be that the inherent conflict between recordation and intrusiveness is not necessarily amenable to simple solution through a unitary approach such as the one-way mirror device, but that resolution of this conflict requires more experience with a variety of potential *568 solutions, some of which might depend upon new or developing technology. It is particularly a conflict of the type presented in this case — a situation in which the psychiatric profession itself is divided and not close to any consensus with respect to a standard of clinical practice, and which appears to need further professional scrutiny if not direct empirical evidence — that the judiciary should be aware of the risk of fashioning apparent remedies that may be premature in light of future experience. It appears to this court that it would be preferable for the judiciary to allow more experience to develop with respect to attorney observation of psychiatric examinations in termination proceedings (a right of observation, only recently sanctioned) before adding further strictures or requirements to the process.
The implication of this court’s approach is therefore to allow the BMHS leeway in structuring the conditions under which such section 384-b (subd 6, par [e]) of the Social Services Law examinations will be conducted, provided that the specific minimal conditions of (i) attorney observation; and (2) attorney nonintrusion, are met.
IV. ORDER
Consistent with the above decision, it is ordered as follows:
(A) Respondent is to be examined by a psychiatrist of the Family Court Mental Health Services (BMHS).
(B) Counsel for all parties — petitioner, respondent, and Law Guardian — may observe the psychiatric examination.
(C) Counsel observing the examination shall remain out of the line of sight of both examiner and examinee.
(D) Counsel observing the examination shall remain silent during the examination, but are permitted to take notes.
(E) Family Court Mental Health Services (BMHS) may — in its discretion — permit counsel to observe the examination in the examination room itself, or in an observation room, and also may, in its discretion, allow the examination to be recorded, by tape or by a court reporter. If the examination is recorded, a transcript of the examination shall be prepared and shall be made available to counsel for all parties.
The clerk of the court is directed to notify all parties of this decision and order, by sending a copy of this decision and order to all counsel participating in this proceeding. The clerk is also directed to notify Family Court Mental Health Services (BMHS) in the same manner, and to advise the BMHS to schedule, as *569 expeditiously as possible, a psychiatric examination of respondent pursuant to section 384-b (subd 6, par [e]) of the Social Services Law.

. Respondent contends that their claim for the exclusive right to be present at the psychiatric examination is not before the court for decision because such claim, initially advanced by respondent, was “discontinued” by stipulation of the parties later in the hearing process. This court does not accept any such claim of discontinuance and considers the issue to be properly before the court for decision. First, prior to any claim of discontinuance, the issue was fully briefed and a full hearing held on it, including expert witness testimony. Second, petitioner’s concurrence in any such stipulation was both tentative and ambiguous. Third, any such stipulation would affect the critical interests of an infant who, whether or not technically considered a party to a termination proceeding, is certainly affected by the outcome. Fourth, important public policy issues are at stake in the resolution of the issue of presence of counsel. Fifth, it appears that, in this context, the attempt to discontinue may well constitute an attempt to avoid the law of the case. All these factors militate against considering this legal issue, initially raised and vigorously argued by respondent, to be discontinued. (See CPLR 3217, subd [b]; 3217, subd [a], par 2; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3217:9, C3217:12; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3217.05; People ex rel. Weissman v Weissman, 50 AD2d 989; Van Aalten v Mack, 17 Misc 2d 828; Palmer v Palmer, 62 Misc 2d 73.)